Moses N. Gish, Thomas H. Brook, and G. W. Baker, *Partners during business under the firm name and style of* Gish, Brook & Co. v. Insurance Company of North America.

(Filed September 7, 1905.)

1. INSURANCE—Reasonable Stipulation in Policy. A stipulation in a fire insurance policy that the insured shall make and keep inventories and books and keep them in a fire proof safe in some place not exposed to fire which would ignite or destroy the building in which the property insured is situated. and in case of loss to produce such books and inventories for the inspection of the insurer and in the event of failure on the part of the insured to produce

Gish *et al* v. Ins. Co. of N. America.

such books and inventories, for the inspection of the insurer, that the entire policy shall be null and void, is a reasonable and competent provision to insert in and attach to the policy.

2. EVIDENCE—Parol—Written Contracts. That a contract in writing, if its terms are free from doubt and ambiguity, must be permitted 'to speak for itself, and cannot at the instance of one of the parties, be altered or contradicted by parol evidence, unless in case of fraud or mutual mistake of facts, is well settled, and this principle is applicable to contracts of insurance.

3. INSURANCE—Reasonable Stipulation in Policy—Agents. It is reasonable and competent for insurance companies to provide in their policies that no officer, agent or other representative of the company shall have the power to waive such stipulation of warranty, unless endorsed thereon or added thereto.

4. SAME—Power of Agents. Where an insurance policy contains such a stipulation of warranty, and provides that no officer, agent or other representative of the company shall have the power to waive any condition or provision of the policy unless such waiver shall 1 e written upon or attached thereto, such limited grant of authority is the measure of their power.

5. SAME. The rules announced in the case of, "The Liverpool London and Globe Insurance Co. v. The T. M. Richardson Lumber Co." reported in the 11th Oklahoma Reports at page 585 approved and followed.

6. SAME—Evidence—Waiver of Conditions May be Shown When. It is always open for the insured to show a waiver of the conditions contained in a policy of fire insurance, or a course of conduct on the part of the insurer which gave him just and reasonable ground to infer that a forfeiture would not be exacted.

7. SAME—Evidence—Agent's Ratification. Where a waiver of the conditions in a fire insurance policy is relied upon by the insured, he must show that the insurer with knowledge of the facts that occasioned the forfeiture, dispensed with the observance of the condition; that where the waiver relied on is the act of an agent, it must be shown either that the agent had express authority from the insurer to make the waiver, or that the insurer subsequently with knowledge of the facts, ratified the action of the agent.

8. SAME—Waiver—How Proved. A waiver may be established by proof of such facts and circumstances as would reasonably result in that conclusion.

9. DEMURRER to EVIDENCE—Overruled, When. Under the facts as disclosed by the record in this case: Held, that the question of waiver was a question of fact, to be determined by the jury under proper instructions and that the court erred in sustaining the demurrer to the evidence and in taking the case from the jury.

(Syllabus by the Court.)

*Error from the District Court of Caddo County; before
B. F. Burwell, Trial Judge.*

*A. J. Morris,* for plaintiff in error.

*Glitsch & Glitsch* and *H. H. Howard,* for defendant in
error.

Opinion of the court by

BEAUCHAMP, J.: On the 9th day of October, 1903, the
plaintiffs in error commenced this action against the defend-
ant in error in the probate court of Caddo county, to recover
the sum of $500.00, as due under the terms of a policy of
fire insurance that had been issued by the defendant in error
to the plaintiffs in error, on the 1st day of July, 1903, on a
stock of furniture situated in Anadarko, and which was, on
the 29th day of July, 1903, destroyed by fire.

After issues joined, trial was had in the probate court,
resulting in a judgment for the plaintiffs in the sum of
$500.00, the amount claimed. The cause was appealed to the
district court of Caddo county, and on the 24th day of May,
1904, a jury was empaneled, and after the plaintiffs had in-
troduced their evidence and rested, the defendant demurred
to the evidence. The demurrer was by the court sustained,
.and judgment rendered against the plaintiffs for costs.

A motion for a new trial was heard and overruled, and
exceptions saved. The plaintiffs bring the case here upon
petition in error and case made for review.

Attached to the policy is a slip containing a warranty,
that the plaintiffs should make an itemized inventory of the
stock insured at least once in each calender year, and that un-
less such inventory had been taken within twelve months

prior to the date of the policy, the same should be taken in detail within thirty days after its date, or that the policy should be void; and that the insured should keep a set of books which should clearly and plainly present a complete record of the business transacted, including all ·purchases, sales and shipments of said stock, both for cash and credit, from the date of the inventory provided for and during the continuance of the policy, and that the plaintiffs should keep such books and inventory, and also the last preceding inventory, securely locked in a fire proof safe at night, in some place not exposed to fire which would ignite or destroy the building in which the stock insured is situated; and in case of loss that they should produce such books and invoices for the inspection of the defendant. In the event of failure on the part of the insured to keep and produce such books and invoices for the inspection of defendant, the entire policy should become null and void, and such failure should constitute a perpetual bar to any recovery thereon.

At the time that the policy was issued, the firm of Perry & Farmer were the local agents for the defendant at Anadarko, with the power to receive applications for insurance against loss or damage by fire and fix rates of premiums; to receive moneys, and to countersign and to issue. policies signed by the president and attested by the secretary of defendant, and to attend to such other duties as pertained to the business of the agency, subject to the rules and regulations of the company, and to such instructions as might from time to time be given by defendant's officers and managers.

In the petition plaintiffs allege that they accepted the policy with the express understanding that the safe clause

should not be binding upon them.   The books and inventories were not kept in a fire proof safe by plaintiffs as required by the terms of the policy, but were kept in a desk in the building with the stock of furniture, and were destroyed with the stock of furniture.

The plaintiffs at the trial offered to prove by Mr. Gish, while on the stand as a witness, that at the time the policy was issued defendant's agents, Perry & Farmer, visited and inspected the goods insured, and at the time they issued the policy knew that the plaintiffs  had no fire proof  safe, and knew that they would not keep the books and papers in a fire proof safe, and that plaintiffs were informed by Perry & Farmer that the fire proof safe clause would not be insisted upon by the defendant;   and with this   understanding the policy was accepted by the plaintiffs, which evidence was by the court, over the objection and exception of the defendant, excluded.

It is insisted by plaintiffs that, as the policy was issued, delivered and the premiums accepted with knowledge by dedendant's agents, that facts existed which would constitute a breach of the conditions of the policy, and that they assured the plaintiffs that such a breach would not be insisted upon; that the defendant cannot, since the fire occurred, take advantage of such breach.   And that the court erred in excluding the evidence offered.

The policy contains the further provision:

"And no officer, agent  or other representative  of this company shall have the power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of this agreement indorsed hereon or added hereto,"

The clear purpose of this evidence was to show that the contract expressed in the policy was not in reality the contract as made, and to receive such evidence for the purpose of raising an estoppel would be a mere evasion of the rule excluding parol evidence when offered to alter or change the terms of a written contract. The defendant cannot be estopped from making the defense, that the contract as set forth in the policy sued on is its contract, or that the plaintiffs have violated it in this particular which is made a condition to their right under it on the ground of negotiations and transactions occurring prior to and at the time the contract was entered into, unless the plaintiffs are permitted to show by parol testimony that the contract, as put in writing does not truly set forth and express the intentions of the parties, as an estoppel could not arise except upon proof of a contract different from that contained in the policy. By the express terms of the policy the authority of Perry & Farmer, as to waiving any provision or condition of the policy, was limited, and they had no authority to waive any such provisions or conditions so as to bind the defendant except in writing, and the plaintiffs were bound to know what their contract contained, and to see that its terms were complied with. It is not ambiguous in its terms but plain and explicit, so that parol evidence could not be resorted to for the purpose of explaining its meaning, and under such circumstances the parties have made it.

The stipulated warranty contained in the policy to keep books and inventories, and to produce them in case of loss, was a reasonable and competent provision to insert or attach to the policy. And it was reasonable and competent for the defendant to provide in its policy that no officer, agent or

other representative of the company should have the power to waive such warranty, unless endorsed thereon or attached thereto, and Perry & Farmer had no authority or power to waive such condition or provision of the policy, except such waiver be written and attached to the policy.

The rule here expressed is in conformity with the rule laid down in the well considered case, the *Liverpool & L. & G. Ins. Co., v. Richardson Lumber Co.*, in the able and carefully prepared opinion by Associate Justice Hainer, 11 Okla. 585, and with which we are still satisfied. The trial court committed no error in excluding this testimony.

The answer of the defendant set forth, that shortly after the discovery of the fire, one of its adjusters went upon the ground for the purpose of inspecting and ascertaining the cause of the fire, and the extent of the loss sustained by plaintiffs, and in the course of that investigation, first ascertained that the warranty to keep the books and inventories in a fire proof safe, and to produce them in case of loss, had been broken and violated by the plaintiffs; and that the books had been destroyed with the stock of furniture; and Gish testified that the adjuster arrived on the 4th day of August; and that he was informed of these facts immediately upon his arrival, and that he, Gish, paid the premiums to Perry & Farmer on that day and the register or record kept by Perry & Farmer shows that the premium was paid by plaintiffs' August 4th; and Mr. Perry testified that he was informed a day or two after the fire occurred, that plaintiffs books were burned in the fire; that notice of loss was sent to the defendant by Perry & Farmer; that the premium for the policy was remitted to the defendant on the 10th day of Sep-

tember, 1903, and that the money was never returned and the company never gave them any instructions to return or offer to return the money. And it was admitted by counsel for defendant that the money was received by defendant some time after the 10th of September; and there is no claim that defendant has returned the money or offered to return it.

On the 4th day of August, on the arrival of defendant's adjuster at Anadarko, Gish had a conversation with him in which he informed him of the facts with reference to the books and inventories, and on the trial plaintiffs sought to prove by Gish that the adjuster, with full knowledge that the books and inventories had not been kept in a fire proof safe, and that they were destroyed with the furniture, required plaintiffs at considerable trouble and expense to furnish duplicate invoices of all goods purchased since the 1st of February, 1903, until the fire occurred, and that the adjuster made no objection that plaintiff's books and invoices were destroyed by fire, and made no claim of a forfeiture.

The defendant objected to any evidence to show a waiver by reason of any acts of the adjuster on August 4th, the day he arrived at Anadarko, for the reason that the witness admitted he had signed an instrument purported to be a non-waiver agreement; which objection was by the court sustained, and exceptions saved by plaintiff.

Whereupon the plaintiffs offered to show by the witness that the paper called the non-waiver agreement, and which is set up in defendant's answer, was signed by the witness Gish upon the representations and statements of the adjuster, that said instrument was nothing more than a privilege granted by the plaintiffs to the defendant to investigate the loss, and that he, Gish signed the same relying upon the representa-

tions and statements of the adjuster. That the instrument was presented to him by the adjuster after dark, and when it would have been difficult for him to read the same, and relying on the representations and statements made by the adjuster, he signed the same. This evidence upon the objection of the defendant was also excluded by the court over the objection and exception of the plaintiffs; and of. which ruling of the court plaintiffs in error complain.

It is not questioned but that the loss was an honest one; the evidence shows that it originated in a building different from that in which plaintiff's goods were situated, and the value of the furniture destroyed and covered by the policy was about $4200. The defendant admitted upon the trial that if the plaintiffs were entitled to recover at all, they were entitled to recover the full face of the policy, so that the question now is, did the defendant by its conduct and the conduct of its agents waive the right to insist upon a forfeiture of the contract of insurance by reason of the plaintiff's having failed to comply with the terms of the warranty?

In the case of *Ins. Co. v. Smith* 30 So. 362, being a case in which the facts are very similar to this case, the supreme court of Mississippi held:

"Where the policy issued by an insurance company on certain fixtures provided that it should be void if the insured's interest in the property should be otherwise than unconditional, the acceptance and holding of the premium on the policy by the company's local agents, of which the company's special agent and adjuster had knowledge, a week after the property, which was mortgaged, had burned, are a waiver of the condition."

We quote from the syllabus in the case of *Johnson v. Mass. Benefit Asso.* (Kansas court of appeals.) 59 Pac. 669:

"Any untrue statement in an application for insurance, when made a part of the policy, and by the insured warranted to be true, avoids the policy of insurance, regardless of the question of its materiality; yet the insurance company may by its conduct waive its right to insist upon such forfeiture. The acceptance and retention of money in payment of premiums after the insurance company has knowledge of all the facts constitute such waiver."

In the case of *Phoenix Ins. Co. v. Boyer,* (Indiana appellate court) 27 N. E. 628, it is said:

"An insurance company accepted payment of the premium due, after notice that the conditions of the policy had been broken by reason of the building becoming vacant. Afterwards the insured requested the company to cancel the policy and return the unearned premium, but the company refused to do so: *Held,* that it had waived the forfeiture, and was liable for a loss afterwards occurring."

In the case of *Bloom v. State Ins. Co.* (Iowa supreme court) 62 N. W. 810:

"The violation of a condition in a fire policy that it shall be void if any suit be commenced for the enforcement of any incumbrance on the insured property without the written consent of the secretary of the company, is waived where the company, with full knowledge of such violation, enforces the payment of a premium note by judicial procedure."

In the case of *McKinney v. German Mut. Fire Ins. Co.* (Wisconsin supreme court.) 62. N. W. 810, it is said:

"An insurance company, which after notice that the construction of an insured building violates a condition in its policy, receives premiums on the policy, waives the conditions."

In the case of *German Ins. Co., v. Shader,* (Neb.) 60 L. R. A. 918, it is said:

"Receiving the premium after destruction of all the insured property, so that nothing remains to which insurance might attach, waives a provision that the insurer shall not be liable for a loss occurring before the payment of the premium.

"Where an agent who has .general power to receive and collect premiums accepts a premium after loss, and the insurer desires to repudiate such act, it should return or tender the money to the insured. Mere return to the agent with instructions which are not executed, will not suffice."

In the case of *Marthinson v. N. B. Mer. Ins. Co.* (Mich. supreme court.) 31 N. W. 291 it is said:

"If an insurance company is informed by the examination of the insured by the adjusters before a notary public, soon after the loss, of certain acts constituting breaches of warranty, but does not then claim a forfeiture, but allows successive proofs of loss to be made, to which, one after the other, it objects on various grounds of form, such action of the company will constitute a waiver of forfeiture for the breaches of warranty referred to, notwithstanding, in making objections to the proofs, the company says that 'it waives none of its rights and defenses' under the policy, 'but expressly reserves each and every one.' "

In the case of *Titus v. Ins. Co.,* 81 N. Y. 410, the court of appeals held:

"It may be asserted broadly that if by any negotiations or transactions with the insured after knowledge of the forfeiture, it recognized the continued validity of the policy or does acts based thereon, or requires the insured by virtue thereof to do some act or incur some expense, the forfeiture is as a matter of law, waived; and it is now settled in this

court after some difference of opinion, that such waiver need not be based upon any new agreement or estoppel."

In the case of *Oshkosh Gas-Light Co., et al v. Germania Fire Ins. Co.,* (Wisconsin supreme court.) 37 N. W. 819, it is said:

"Where, after proof of loss, an adjuster, knowing of a breach of condition by assured, continues to recognize the policy as valid, and attempts to adjust the loss, thereby causing the assured expense and trouble, the forfeiture is waived."

Also the same court in the case of *Dick et al v. Eq. Fire & Marine Ins. Co.,* 65 N. W. 742, said:

"Where an insurance company has knowledge of facts which show that a condition of the policy has been broken, the act of its adjuster, sent to ascertain the amount of the loss, in requiring the assured, at some trouble and cost, to supplement his proofs of loss by furnishing a 'carpenter's estimate' of the damage estops the company from declaring such breach to be a forfeiture of the policy."

In the case of *Roberts, Willis & Taylor Co. et al v. Sun Mut. Ins. Co.,* (Texas court of civil appeals) 35 S. W. 955, it is said:

"An insurance agent cannot waive the requirements of the 'iron-safe clause' when that authority is expressly withheld from him by the terms of the policy.

"2. Where an adjuster after learning of the destruction of the insured's itemized inventory, ledger, and scratch book, refused to proceed with the investigation of the loss until insured agreed that further examination into the loss should not 'be taken as any waiver of any defense the companies may have by reason of the breach of warranty as contained in the iron-safe clause, we having lost our detailed inventory', there was evidence from which the jury might infer a waiver

of the requirements to produce the books other than the detailed inventory, particularly as the adjuster, after making an estimate of the loss, pursuant to said agreement applied to plaintiffs. to whom the policies had been assigned, for duplicate invoices of purchases of goods.

"3:   The limitation in a policy of the power of an agent to waive certain   conditions in the policy does   not apply to the adjuster after the policy has become a demand against the insurer."

The case   of   *Brown v. State Ins. Co.* (Iowa   supreme court.) 38 N. W. 135, says:

"Under an insurance policy requiring the insured to keep his books of invoice secure from fire, where he fails to do so the company waives its right to insist upon his failure as a forfeiture of the policy by requiring the insured, after the fire, to incur the expense and trouble of obtaining bills and vouchers of all his goods received for several years before."

And the same court in the case of *Corson v. Anchor Mut. Ins. Co.*, 85 N. W. 806, said:

"1st.   Where a policy provided that it should be void if the assured failed to keep a set of books in a fire proof safe. the failure to do so was waived by a statement of the adjuster that the assured would have to get duplicates for certain invoices in order to make required proof for loss, whereby assured was induced, at considerable expense and trouble, to procure such duplicate copies.

"2.   Where a policy provided that it should be void if assured failed to keep a certain set of books in a fire proof safe, a waiver of such failure also operates to excuse the production of such books in an action on the policy.

"3.   Where, as a preliminary to adjustment of a loss under a policy, assured signed an agreement stipulating that nothing the adjuster might do, say, or write should be construed as waiving any defense of the   company, as to condi-

tions or requirements of the policy, he was not thereby precluded from pleading a waiver by the adjuster of a clause in the policy, since the adjuster having power to make such waiver, could not deprive himself of that power by his own act."

In the case of *German Ins. Co., of Freeport Ill. v. Allen* (Kansas supreme court.) 77 Pac. 529, it is said:

"Where the adjuster of a fire insurance company, after a loss learns of a noncompliance by the insured with the provision of the policy with regard to keeping books, and instead of declaring a forfeiture therefor, negotiates with the insured for the making of other and better proofs, extends the time to make proofs, and requires the insured, at some trouble and expense, to submit to an examination under oath as to the fire and the property destroyed, the company will be deemed to have waived the right of forfeiture."

*Ins. Co v. Bradford* 60 Kans. 82, 55 Pac. 335, and many more authorities in the state courts might be cited, but we think it unnecessary.

In the case of *Phoenix Ins. Co. v. Raddin,* 120 U. S. 183, the supreme court of the U. S. in an opinion of the court by Mr. Justice Gray say:

"It follows that the only question upon the instructions of the court to the jury, which is open to the defendant on this bill of exceptions, is whether, if insurers accept payment of a premium after they know that there has been a breach of a condition of the policy, their acceptance of the premium is a waiver of the right to avoid the policy for that breach.

"Upon principle and authority, there can be no doubt that it is. To hold otherwise would be to maintain that the contract of insurance requires good faith of the assured only, and not of the insurers, and to permit insurers, knowing

all the facts, to continue to receive new benefits from the contract while they decline to bear its burdens."

We quote from the syllabus  in the case of *Ins. Co. v. Wolff*, 95 U. S. 326:

"A took out a policy of insurance upon the life of her husband. The premium was payable annually on the first day of November. The policy stipulated for the payment of the amount of the insurance within sixty days after due notice and proof of the death of the insured, subject however to certain express conditions. One of these conditions provided. that, if the premiums were not paid on or before the days mentioned for their payment the company should not be liable for the sum insured, or any part of it, and that the policy should cease and determine. * * * * The policy declared that the agents of the company were not authorized to make, alter, or discharge contracts, or waive forfeitures; but the company notwithstanding this provision, sent renewal receipts signed by its secretary; and their use when countersigned by its local manager and cashier, was subject entirely to the judgment of its local agent. It was his habit to give such receipts whenever the premiums were paid after the time stipulated. His mode of dealing with persons taking out policies at the local office, his use of renewal receipts, his acceptance of premiums after the day on which they were payable, were all known to the home company and it retained the premiums thus received.

"The insured died at the city of New Orleans on the 11th day of November, 1872, * * * * and the annual premium due at the latter date was not paid until ten days thereafter. A friend then paid it to the agent and took from him a renewal receipt: * * * * *Held,* that the company by the agent's receipt of the premium, waived the forfeiture for nonpayment at the stipulated time. * * * *.

"A waiver can only be justly claimed by the assured where the course of dealing by the company has been such as

to induce his action; and the company should be apprised the facts which create the forfeiture, and of those which will necessarily influence its judgment in consenting to waive it."

In the case of *Ins. Co. v. Eggleston,* 96 U. S. 572, it is said:

"Any agreement, declaration, or course of action on the part of an insurance company, which leads a party insured to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract."

And in the opinion of Justice Bradley it is said:

"We have recently, in the case of *Ins. Co. v. Norton,* 96 U. S. 234, shown that forfeitures are not favored in the law; and that courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture or an agreement to do so upon which the party has relied and acted."

We quote from the syllabus in the case of *Knights of Pythias v. Kalinski,* 163 U. S. 289:

"The continued receipts of assessments upon an endowment certificate up to the day of the holder's death is, under the circumstances of this case, a waiver of any technical forfeiture by reason of non-payment of lodge dues."

And in the opinion of Mr. Justice Brown, is the following:

"Granting that the continued receipt of premiums or assessments after a forfeiture has occurred will only be construed as a waiver when the facts constituting a forfeiture are known to the company. *Insurance Co. v. Wolff,* 95 U. S. 326; *Bennecke v. Insurance Co.,* 105 U. S. 355. This is true only of such facts as are peculiarly within the knowledge of

the assured. If the company ought to have known of the facts, or with proper attention to its own business would have been apprised of them, it has no right to set up its ignorance as an excuse."

In the case of *Jennings v. Chenango Ins. Co.*, 2 Denio, 75, in the opinion by Judge DePue cited in the case of *Northern Assurance Co. v. Grand View Building Ass'n.*, 183 U. S. 329, and of which it is said by Justice Shiras:

"In the opinion of the court given by Judge DePue, there was a full examination of cases on the subject of the admissibility of parol evidence in actions on policies of insurance, and some of his observations are so weighty, and so applicable to the case before us, that we shall quote from them at length."

It is said by Judge DePue:

"If strict compliance with the conditions of insurance, with respect to matters to be done by the insured after the contract has been concluded, has been waived, such waiver may, in general, be shown by extrinsic evidence, by parol."

And later in the opinion by Justice Shiras, in the case of *Northern Assurance Co. v. Grand View Bld'g Ass'n supra*, after citing and quoting from numerous authorities is the following:

"What, then, are the principles sustained by the authorities, and applicable to the case in hand? They may be briefly stated thus: * * * That where waiver is relied on, the plaintiff must show that the company, with knowledge of the facts that occasioned the forfeiture, dispensed with the observance of the condition that, where the waiver relied on is the act of an agent it must be shown either that the agent had express authority from the company to make the waiver, or that the company subsequently with knowledge of the facts, ratified the action of the agent."

Other authorities might be cited but we think it unnecessary.

The record discloses that the trial court held to the view that unless the plaintiffs could show that the adjuster had express authority from the board of directors or from the company through some one who had the power to delegate that authority, that the adjuster could not waive any of the conditions of the policy by any act of his.

It is admitted by the answer of the defendant, that it sent the adjuster to Anadarko for the purpose of adjusting this loss, and that he had the power to investigate and examine into all of the facts and circumstances with reference to the loss, and that he had authority to make a full and complete settlement with the plaintiffs; we may reasonably conclude from our general knowledge as to such matters. In fact, although it is alleged in the petition that the adjuster by his acts and conduct had waived the iron safe clause in the policy, it is not denied by the defendant in its answer that the adjuster had the power and authority to waive such clause but it is alleged that the plaintiffs signed a non-waiver agreement and delivered to the adjuster.

The matter of securing invoices was clearly within the scope of the agent's authority in determining the amount of the loss, and where an agent acts within the scope of his authority he will bind his principal, but we need not rest our conclusion in this case upon the question of the authority of the adjuster or agent, for we must presume that in the due and ordinary course of business, and within a reasonable time, that the adjuster reported the facts to the defendant. In fact the answer of the defendant admits that; and the undis-

puted evidence is that the plaintiffs paid the premium due some days after the fire. Mr. Perry testified that he remitted the premium to the defendant on the 10th day of September, more than thirty days after the adjuster was at Anadarko, and that while he had no personal recollection as to whether at the time of making the remittance, he reported to the company the particular policy upon which it should apply, it was his usual custom to do so, and it is admitted in the record that the defendant received the remittance of the premium made by Perry & Farmer, and that it has never returned the premium or offered to do so. So that in view of the allegations in defendant's answer, and the facts and circumstances in existence, we must conclude that the defendant was fully informed as to the loss and as to the facts by reason of which it claimed a forfeiture of the right of the plaintiffs to recover, at the time that it received the premium, and with full knowledge thereof retains the same. Having received and retained the benefits of the contract and having required the plaintiffs to incur the expense of procuring the bills and invoices, and having obtained whatever benefits there were to be obtained from them, and it being for their information alone, it would manifestly be unjust to permit the defendant to now take advantage of the forfeiture.

It is contended by defendant, that by signing what is called the non-waiver agreement, the plaintiffs cut themselves off from relying upon the acts of the adjuster as constituting a waiver of the forfeiture. This was an instrument without consideration; and could only be received in evidence for the purpose of determining what the intentions of the parties were at the time. It is alleged in plaintiff's reply, that

he signed the same upon the false and fraudulent represen-
tations of the adjuster and when the same should be received
in evidence it would be competent for the plaintiffs to show
the circumstances under which·it was signed, that the jury
might determine what the facts were; however, the fact that
the instrument was written up at the time by the adjuster
and that the defendant in its answer seeks to take advantage
of the provision thereof, if not a clear admission that the ad-
juster had the authority to waive the forfeiture conditioned
in the policy, is a circumstance tending strongly to sustain
the position of the plaintiffs that he had such authority.

In the case of *Thompson v. Ins. Co.*, 104 U. S. 260, in
the opinion of the court by Mr. Justice Bradley, it is said:

"It is always open for the insured to show a waiver of
.the condition, or a course of conduct on the part of the in-
surer which gave him just and reasonable ground to infer
that a forfeiture would not be exacted."

In the case of *Hartford Life Ins. Co. v. Unsell,* 144 U. S.
448. the question involved was whether, under the circum-
stances the defendant waived a strict compliance with the
stipulation in the contract as to the payment, at the time
specified, of the premiums or dues on the certificate of in-
surance. The trial court instructed the jury:

"But the plaintiff says, that beyond these receipts of
money after the day specified, there were instances in which
money was received without any such notice. Now the ques-
tion comes up in respect to that, was there such a continuance
of business, was the whole course of business, from the com-
mencement to the close, such that from this and that, and
from all the receipts and all the transactions, he had a right
to believe and did believe that the question of health even
would not be considered, and that it would be willing to take

his money shortly after it had become due without inquiry as to his health? If so that makes a waiver. If the company by its conduct, led him, as a reasonable and prudent business man, to believe that he could make payments a few days after, sick or well, it cannot turn around now and say, 'You did not pay at the time'. I cannot say to you, as a matter of law, that one receipt, after the time specified would make a waiver, or that fifty would. It is not in the numbers. The question is for you to consider and determine from all of them and from the whole course of business, whether, as a prudent business man, he had a right to believe that it was immaterial whether he paid on the day or a few days later. If the course of conduct was such that he had a right to believe that he could only pay in good health, then there was no waiver applicable to the case at bar. It must have been such a course of conduct as would lead a reasonably prudent man to believe that the company was willing to take payment, sick or well."

Justice Harlan, who wrote the opinion of the court with reference to this instruction says:

"The law applicable to the case was stated to the jury with substantial accuracy. It is a mistake to suppose that the charge was inconsistent with ·the principles announced in *Thompson v. Ins. Co.* or any other case decided by this court."

The trial court erred in excluding the testimony offered, and in sustaining the demurrer to the evidence. The jury should have been permitted to say under proper instructions whether the defendant after full knowledge of all the facts upon which it claims a forfeiture, had received and retained the premium, the consideration for which the policy was issued, and whether with knowledge of the facts, the defendant had ratified the actions of its adjuster and agents.

It is argued by defendant that this case cannot be reversed except by overruling the previous decision of this court

in the case of *Liverpool & L. & G. Ins. Co. v. Richardson Lumber Co., supra.*

The question upon which this case must be reversed was not involved in that case. There a waiver of the conditions in the policy was claimed by reason of a parol contemporaneous agreement with the agent of the company and the knowledge of such agent at the time that the policy was issued, of facts that were in plain violation of the express stipulations and conditions in the policy. In this case the alleged acts which constitute the waiver of the stipulations and conditions in the policy occurred after the contract of insurance was fully consummated, and after the loss occurred, and a liability upon the policy was claimed.

And in that case it is held:

"Where the waiver relied on is the act of the agent of the company, it must be shown that the agent had express authority from the company to make the waiver or that the company subsequently, with knowledge of the facts, ratified the unauthorized action of the agent."

All of which can be established by proof of such facts and circumstances as would necessarily result in that conclusion, and under the pleadings and circumstances of this case, are questions of fact to be determined by the jury under proper instructions.

Our attention is called by defendant in error, to the case of *Smith et al. v. Ins. Co.* (Dakota supreme court) 43 N. W. 810, and *Burners Adm's v. German-American Ins. Co.* (Kentucky court of appeals) 45 S. W. 109, which holds that:

"Acceptance of the premium on a forfeited policy, after loss of the property by fire, does not waive the forfeiture,

where the premium was due and a part thereof earned before the forfeiture."

The case of *Smith v. Ins. Co. supra.* was a case in which the violation of the conditions in the policy of insurance relied upon as a forfeiture, was the giving of a chattel mortgage, and the taking of an additional insurance upon the property by the insured. In the opinion it is said:

"It must be borne in mind that the policy had been in force more than one year when the chattel mortgage was given, and over two years when the additional insurance was obtained. The risk had attached, the note and interest were past due * * *. The whole premium was earned although the full term fixed for the running of the policy had not elapsed. The risk had terminated through no fault of the insurer, and the defendant was legally entitled to collect and retain the premiums. Had the policy in this case been voidable in its inception, and no risk had ever attached, counsel's position would have been tenable."

The judgment of the district court of Caddo county, is reversed and remanded, with costs to defendant in error and with directions to that court to grant a new trial overruling the demurrer to the evidence and to proceed in accordance with the views herein expressed.

Burwell, J., who presided in the court below, not sitting; all the other Justices concurring.