# SHAWNEE FIRE INS. CO. v. THOMPSON & ROWELL et al.

## No. 1367. Opinion Filed December 12, 1911.

### (119 Pac. 985.)

1. **INSURANCE—Promissory Warranties—Validity.** A stipulation in a fire insurance policy that the insured shall make and keep inventories and a set of books and keep them in a fireproof safe at night and at all times when the building mentioned in the policy is not open for business, or, failing in this, to keep such inventories and books at night and at all such times in some place not exposed to fire which would ignite or destroy said building, and in case of loss to produce such books and inventories for the inspection of the insurer, and in the event of failure on the part of the insured to produce such books and inventories, for the inspection of the insurer, that the entire policy shall be null and void, is a reasonable and competent provision to insert and attach to the policy.

2. **SAME—Promissory Warranties—Performance—"Inventory."** An inventory which bunches merchandise together without itemizing same, such as, "Xmas Goods, $784.39. Clothing, $1,500.00; Racket Goods, $900.00; Stone, J., $145.00; Glass, J. and Silver, $190.00; Enamel Ware, $674.00; Tinware, and Glass, $187.00; Semi Porcelain Ware, $387.00; Chinaware and Silver, $847.75, etc.," is not such an inventory as was required by the terms of the insurance policy sued on in this case.

3. **SAME—Promissory Warranties—"Inventory."** An inventory, in the sense used in the insurance policy sued on, means an itemized list or enumeration of property, article by article, and is not intended merely to show the gross value of the property insured, but is for the purpose of enabling the parties to ascertain the different articles which go to make up the entire stock in order that the insurance company may test the correctness of the claim for damages in two respects: First, whether the articles composing the stock belong to the class of property covered by the policy; second, whether the valuation attached to the different items is reasonable.

4. **SAME—Construction—General Rules.** The "three-fourths value" and "iron-safe" clauses attached to and forming a part of the contract of insurance should be interpreted according to the same rules by which other contracts are construed, and a substantial compliance therewith is sufficient. The evidence in the case examined, and held not to show a substantial compliance with said provisions.

Opinion of the Court.

5.   **SAME — Promissory Warranties — Inventories — Sufficiency.** The provision of a fire insurance contract which requires that the insured will keep such books and inventory securely locked in a fireproof safe at night, etc., is a promissory warranty, and is not substantially complied with by producing an inventory made one month prior to the fire, where it is shown that the inventory made within twelve calendar months prior to the issuance of the policy had been negligently allowed to remain out of the fire-proof safe, and, together with the books, be destroyed, especially when the last inventory was not made in compliance with the terms of the policy, the goods not being itemized, but mere summaries of the amounts and values being given.

6.   **SAME—Promissory Warranties—Keeping of Books.** Books showing "all purchases and sales, both for cash and credit" within the meaning of a warranty in a policy of insurance, requiring the insured to keep a set of books showing a complete record of business transactions including all such purchases or sales, need only be such as will show these matters to a man of ordinary intelligence, but plaintiff's Exhibit D, which was a small private pocket ledger, showing the amount of cash deposited in the bank, after deducting all expenses of the business, and covering a period of three weeks preceding the fire, is not a substantial compliance with said warranty, especially in view of the fact that the insured negligently permitted his books, including the cashbook, to remain without the fireproof safe and be destroyed by fire.

7.   **TRIAL—Taking Case from Jury—Demurrer to Evidence.** When the evidence, with all the inferences that can be properly drawn from it, is insufficient to support a verdict, it is error to overrule a demurrer thereto.

(Syllabus by Robertson, C.)

*Error from District Court, Pawnee County; L. M. Poe, Judge.*

Action by Thompson & Rowell and another against the Shawnee Fire Insurance Company. Judgment for plaintiffs, and defendant brings error. Reversed, with instructions.

*Crane & Crane* and *Fred S. Liscum,* for plaintiff in error.

*W. L. Eagleton* and *Sam K. Sullivan,* for defendants in error.

Opinion by ROBERTSON, C. Thompson & Rowell were engaged in the retail mercantile business at Ralston, and on October 22, 1907, secured a policy of insurance from the defendant, on their stock of merchandise, in the sum of $2,000, paying therefor a premium of $86. On October 30th, eight days thereafter, the stock was consumed by fire. In addition to the $2,000

policy, plaintiffs had $11,500 insurance on their stock, making a total of $13,500 insurance. After the loss, Thompson & Rowell assigned the policy, which defendant issued, to E. A. Bullock, as trustee for certain creditors. Thereafter on March 7, 1908, plaintiffs filed suit in the district court of Pawnee county against defendant on said policy, alleging that defendant, although liable for said amount, refused to pay the same or any part thereof, and that plaintiff performed all the conditions of their said contract, etc. A copy of the policy was attached to plaintiff's petition and made a part thereof.

Defendant answered, admitting the execution of the policy sued on, whereby it insured plaintiffs subject to the limitations, conditions, agreements, and warranties in said policy contained. It admitted that the property was destroyed by fire as alleged; admitted the partnership; admitted that a proof of loss was furnished; but pleaded that the policy, among other things, contained the following conditions and stipulations, known as the "three-fourths value" clause, and the "iron-safe" clause, the former in the following language, to wit:

"In consideration of the rate of premium at which this policy is written, it is a condition of this insurance that in the event of loss or damage by fire to the property described herein, this company shall not be liable for an amount greater than three-fourths of the cash market value of each item of the same, not exceeding the amount of the said policy at the time immediately preceding such loss or damage; and in the event of other insurance on the property described herein, then this company shall be liable only for its proportion, three-fourths of such cash market value at the time of the fire, other concurrent insurance permitted, but total insurance shall at no time exceed three-fourths of the value of each item of property described herein."

And the latter as follows:

"The following covenants and warranties on the part of the assured, and conditions on the part of the Shawnee Fire Insurance Company. are hereby made a part of the policy to which this clause is attached:

"First. The assured will take an itemized inventory of stock hereby insured at least once in each calendar year, and unless such inventory shall have been taken within the twelve calendar

months prior to the date of this policy, the same shall be taken in detail within thirty days after said date, or this policy shall be null and void from and after the expiration of the said thirty days, and upon demand of the insured within three months from the date of this policy the unearned premium for the unexpired terms of this policy shall be returned.

"Second. The assured shall keep a set of books which shall clearly and plainly present a complete record of the business transacted, including all purchases, sales and shipments of such stock, both for cash and credit, from the date of the inventory provided for in the first section of this clause and during the continuance of this period.

"Third. The assured will keep such books and inventory and also the last preceding inventory securely locked in a fire-proof safe at night, and at all times when the building mentioned in this policy or the portion thereof, containing the stock described therein, is not actually open for business, or failing in this the assured will keep such books and inventories at night and all such times in some place not exposed to fire which would ignite or destroy the aforesaid building, and in case of loss the assured specifically warrants, agrees and covenants to produce said books and inventories for the inspection of said company; and in the event of a failure on the part of the assured to keep such books and inventories for the inspection of the said company, this entire policy shall become null and void and such failure shall constitute a perpetual bar to any recovery thereon."

The policy also contained a nonwaiver stipulation, which provided that none of the conditions of said policy could be waived by any agent, except by written agreement, attached to the policy, forming a part thereof. The answer set up the breach of these clauses, in that plaintiffs had not taken an itemized inventory of the stock covered by the policy within the twelve calendar months prior to the date of the policy, and that they had not taken one within thirty days after said date, and that insured had not kept a set of books which clearly and plainly presented a complete record of the business transactions, including all purchases and sales and shipments of all such stock, both cash and credit, from the date of the inventory, for which said policy provided, and during the continuance thereof; that they kept no books or records of all purchases made by them;

that they kept no record of sales and shipments of such stock, either for cash or credit, from the date of the inventory, during the continuance of said policy. The answer also charges that Thompson & Rowell further breached the conditions and terms of said policy, in that they did not keep said books and inventory locked in a fireproof safe at night, or in some place not exposed to fire, and that they failed to produce said books and inventories after said loss, although defendant demanded that the same be produced. Defendant, after thus answering, tendered into court the amount of the premium paid by the insured for said policy, and in addition to the above it is urged by the defendant that the policy contained the following clauses, to wit:

"The insured as often as required, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to examination under oath by any person named by this company; and subscribe the same; and, as often as required, shall produce for examination all books of account, bills, invoices, and other vouchers, or certified copies thereof, if originals be lost, at such reasonable place as may be designated by this company or its representative and shall permit extracts and copies thereof to be made.

"This company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof by any requirement, act or proceeding on its part relating to the appraisal or to any examination herein provided for."

It was alleged that the stock of merchandise burned did not exceed the value of $13,500, and that therefore the same was insured for more than three-fourths of its value and the policy was therefore void; and, further, that said policy contained a warranty to the effect that subsequent insurance should be allowed to the extent of making the total amount of insurance equal three-fourths of the value of the stock; and, further, that in case there was fraud, or false swearing by the insured, touching any matter relating to the insurance, or subject thereof, either before or after loss, the policy should be void. That some time in December, after the fire, plaintiffs presented a sworn statement signed by E. G. Rowell, one of the plaintiffs, and a member of the firm of Thompson & Rowell, in which a claim was made

that the loss and damages was $13,407, which defendant alleges was a false and untrue statement.

Plaintiffs replied by general denial, and also alleged that at the time of the issuance of said policy and at various times thereafter defendant waived the right to insist that said policy was not properly issued, and also that by its said acts it has waived any breach in said contract, by ratifying the acts and statements of its agent (who, by the way, was H. E. Thompson, one of the insured) receiving the premium on said policy, and by demanding after the fire that plaintiffs produce their books and inventory, and by demanding invoices of goods purchased by said plaintiffs.

Defendant on February 3, 1909, filed its motion to require plaintiffs to make their reply more definite and certain in various particulars, which motion was by the court overruled, and exception allowed. Thereafter trial was had to a jury, and a verdict for $2,000 was rendered in favor of plaintiffs and against defendants, upon which judgment was entered. Motion for new trial was duly filed, presented, overruled, exceptions taken, and defendant prosecutes this appeal to reverse said judgment.

Many alleged errors are relied upon by the insurance company, but the principal reason assigned, and seemingly depended upon by it for a reversal, is the overruling, by the trial court, of defendant's demurrer to the evidence offered by plaintiffs in support of the allegations of their petition. The consideration of this assignment, in our opinion, will dispose of the case, and the other errors raised in the brief and relied upon will not therefore be further considered.

The contract, or policy, which is the basis of this suit, provided, as has been seen, that the insured would make an itemized inventory of the entire stock covered by the policy at least once in every calendar year, and unless such inventory should have been taken within twelve months prior to the date of the policy, then one should be taken within thirty days after its date, or the policy should become null and void. It also provided that the insured should keep a set of books which should clearly and

plainly present a complete record of business transactions, including purchases, and sales, and shipment of such stock, both for cash and credit, from the date of the inventory provided for in the first section of said clause, during the continuance of said policy; and also that these books and this inventory, and the last preceding inventory, should be kept securely locked, in a fire-proof safe at night, and at all times when the store was not open for business, or that they should be kept in some other safe place, and should be produced for inspection by the defendant company, and in the event that they should not be so produced, the policy would be void, and no recovery could be had thereon.

These provisions in policies of insurance, commonly known as "iron-safe" and "three-fourths value" clause, are common to nearly all fire insurance contracts, and the provisions are substantially the same in all policies. That they are reasonable and enforceable is no longer an open question, and it is a proper method of providing for evidence in case of loss to determine the actual damage, and their validity is determined according to the same rules by which other contracts are measured and construed. In this case the policy was written on the 22d day of October, 1907, and the loss occurred on the 30th day of the same month; the testimony shows, without dispute, that insured took an inventory of their stock in January, 1907, within the twelve calendar months before the policy was issued; the evidence further shows that the insured took what they claimed to be an inventory on or about the 1st of October, 1907. Defendant, however, denies that this was an inventory within the meaning of the clause therein set out. The evidence further shows that the insured kept books in which they attempted to show the amount of their purchases and sales from the date of the January, 1907, inventory; this January inventory, together with the books showing the record of the cash sales from January, 1907, to October 10, 1907, were not kept in an iron safe at night, but were destroyed by the fire that destroyed the stock of goods, as were also the bills and invoices of goods sent by the wholesale houses from whom the goods were purchased. It was shown

that the books purporting to show the amount of goods purchased did not contain a complete record, there being several thousand dollars worth of goods bought, according to the evidence, of which no record was kept.

Under the demurrer to the evidence five points are raised and discussed by the parties, as follows: First, the destruction of the cashbook by fire, containing the record of cash sales from January 1, 1907, to October 10, 1907, at a time when the store was not open for business, and the failure to preserve the same for defendant's inspection was a legal bar to a recovery according to the terms of the policy; and, second, the failure to preserve the inventory of January, 1907, for defendant's inspection and examination, and its loss by fire in the building containing the stock, was an effective bar to plaintiffs' right to recover; and, third, the admitted failure to keep a complete record of all purchases made by plaintiffs was a complete bar to plaintiffs' right to recover; and, fourth, an inventory being an itemized list or enumeration of property, article by article, the invoice, sometimes denominated inventory, taken by plaintiffs from October 1, to October 10, 1907, did not constitute an inventory within the meaning of the policy, because the same was not itemized as by the policy required; and, fifth, the little pocket private ledger of E. G. Rowell, called by him the cashbook, did not show the complete record of cash sales from the date of the issuance of the policy until the fire, nor from the date of the taking of the last invoice until the fire, it containing only a statement of the amount of cash collected during each day from all sources including previous credit sales, less all the expenses paid during each day. Let us examine and consider these various points in their order.

It is admitted that the cashbook and the January, 1907, inventory were not kept in an iron safe; and it is also admitted that they were destroyed by fire in the building in which the stock of goods burned, and by the same fire. The insured contend that the burning of the January inventory was a matter of no consequence, for that they had taken another, subsequent

to said date, and had presented the same to the defendant.   But
defendant does not admit that this is a substantial compliance
with the terms of said clause for that, first, the October inven-
tory was not such an inventory as was required under the terms
of the policy; and, second, that even though it had been intended
as an inventory, it was not itemized as required of inventories
under that clause of the policy set up in the answer.   The ob-
jection to the sufficiency of the October inventory warrants an
investigation of that subject.   Plaintiff's Exhibit C, case-made,
pages 483 to 498, inclusive, is a copy of the October inventory.
It is in the usual form of inventories, except under the head of
"Hose, Vests, Pants and Handkerchiefs," we find the following:

| | | |
|---|---|---:|
| 10 | doz. at 25 | $30 00 |
| 5 | doz. at 30 | 18 00 |
| 3½ | doz. at 30 | 12 60 |
| 11 | doz. at 35 | 46 20 |
| 3 | doz. at 35 | 12 60 |
| 5 | doz. at 15 | 9 00 |
| 10 | doz. at 15 | 18 00 |
| 14 | doz. at 15 | 21 00 |
| 7 | doz. at 25 | 4 10 |
| 10 | doz. at 15 | 18 00 |
| 10 | doz. at 15 | 18 00 |
| 6 | doz. at 25 | 18 00 |
| 4 | doz. at 20 | 9 50 |
| 12 | doz. at 10 | 14 50 |
| 7 | doz. at 20 | 16 80 |
| 8 | doz. at 15 | 14 40 |
| 2 | doz. wool at 15 | 3 60 |
| 1 | doz. bats at 25 | 3 00 |
| 1 | doz. bats at 20 | 2 40 |
| 3 | doz. bats at 15 | 1 85 |

Also on page 493 of the case-made, the following:

| | |
|---|---:|
| Xmas goods job lots Fris. | $ 784 39 |
| Clothing just received | 1500 00 |
| Racket goods by lot | 900 00 |
| Stone, J. | 145 00 |
| Glass, J. and Silver | 190 00 |
| Enamel ware | 674 00 |
| Tin ware and glass | 187 00 |
| Semi porcelain ware | 387 00 |

Chinaware and silver_____ 847 85

Thus it is seen that at least one-third of the entire stock inventoried was bunched together without being itemized. It is seen also that there is one item of clothing amounting to $1,500, without any attempt to itemize the same. Mr. Thompson, one of the plaintiffs, attempted (Record, pp. 70, 71, 72) to explain why the clothing was inventoried in this manner, but the explanation offered is anything but satisfactory. In answer to a question as to when the clothing was purchased he said it was not procured until after the invoice was completed; that he could not tell from whom it was purchased; that the books saved from the fire would show when the same was received, but when asked to take the books and ascertain that fact he evaded that question and answered, "I can answer that question, if I remember there was $1,500 worth of clothing stored in a wareroom." Thereafter he said that it had been stored there subsequent to the completion of the invoice. He said he was well acquainted with the business and was in the store every day. The duplicate invoice of this large bill of clothing was not produced, although several months intervened between the time of the fire and the filing of the suit. Neither was there any reasonable explanation offered as to why the other large sums were included in this October inventory without being itemized. So it seems to us that mere summaries, such as is found on page 493 of the inventory, aggregating nearly $6,000 worth of goods, without attempting to itemize, is not such an inventory as the insured agreed to make and keep for the defendant company.

"A fire policy provided that, unless a complete inventory of the stock covered had been taken within 12 months prior to its issue, one should be taken within 30 days, or it would be void. The only inventory taken included such items as: 'Hardware, $25.00; Marble City Drug Co., $22.50; bill from Houston Drug Co., $53.65,' etc. *Held*, not a compliance with the policy; it being impossible to determine either the quantity, the number of items included in the summarized entry, the value per item, the reasonableness of the valuation, or whether the articles were within the purview of the policy." (*Fire Ass'n of Philadelphia v. Calhoun*, 28 Tex. Civ. App. 409, 67 S. W. 153.)

In *Niagara Fire Ins. Co. v. Forehand,* 169 Ill. 626, 48 N. E. 830, it is said:

"The provisions of a fire insurance policy upon a stock of goods that the insured shall take inventories, and keep correct books showing purchases and sales, and keep the inventories and books in a place secure from fire, when the store is closed, is a reasonable provision."

See, also, *Gish et al. v. Insurance Co.,* 16 Okla. 59, 87 Pac. 869, 13 L. R. A. (N. S.) 826; *Insurance Co. v. Fuller,* 26 Okla. 728, 110 Pac. 763.

The question of the sufficiency of an inventory such as the one offered is settled by the case of *Assurance Company v. Kemenedo,* 94 Tex. 373, 61 S. W. 1102. In that case it was held that the object of an inventory in insurance cases was not to ascertain the gross value of the property insured, but to ascertain the different articles which went to make up the stock in order that the insurance company might test the correctness of the claim in two respects: First, whether the articles composing the stock belonged to the class of property covered by the policy; second, whether the valuation attached to the different items was reasonable. The ordinary and accepted meaning of the word "inventory" is "an itemized list or enumeration of property, article by article." *Roberts, Willis & Taylor Co. v. Sun Mutual Ins. Co.,* 19 Tex. Civ. App. 338, 48 S. W. 559; *Assurance Co. v. Masterson,* 25 Tex. Civ. App. 518, 61 S. W. 962. No discussion is needed to demonstrate that the inventory in question fails to meet the requirements of this definition. From the items given it is impossible to ascertain either the quantity, the number of items included in the summarized entry, the value per item, the reasonableness of the gross valuation, or whether they were properly within the purview of the policy. The inventory furnishes nothing upon which to base a calculation. The items to which we have especially referred comprise from one-third to one-half of the stock of goods, and even if it should be conceded that the remainder of the stock was properly inventoried, the objectionable part appears so large a proportion to the full amount that it can

not be held to be a substantial compliance with the requirements of the insurance contract.

It was to obviate such conditions that the defendant and insured contracted in the policy that an itemized inventory and a complete record of goods received and sold, should be kept in an iron fireproof safe. It has been held by our Supreme Court that such stipulations are valid, and if that be true they should, like other contracts, be enforced. To be sure, a substantial compliance therewith would be sufficient, but in this particular instance there was no substantial compliance with the terms of said contract. Counsel for plaintiffs insist that there has been, but we think otherwise. Here it is shown that in some instances the itemized invoices of certain job lots of goods had been taken, but strange to say, they had been placed within the boxes containing the goods, and had been nailed up and stored away, and were burned with the goods; the inventory should have been kept in the iron fireproof safe or in some other place of safety. The improbable story that of a stock of goods worth from $15,000 to $16,000, a member of the firm could not tell when a $1,500 purchase of clothing was made, or when it was received, whether before or after the October inventory, or from whom it was purchased, and that the original invoice had burned, and that no attempt was made to secure a duplicate thereof,. marks this phase of the case as most unusual, and aids materially in rendering the October inventory worthless, as a substantial compliance with the terms of the contract.

In *Gish et al. v. Insurance Co. of North America,* 16 Okla. 59, 87 Pac. 869, 13 L. R. A. (N. S.) 826, it was held that these identical clauses in a fire insurance contract were reasonable and valid, and paragraph 1 of the syllabus in that case reads as follows:'

"A stipulation in a fire insurance policy that the insured shall make and keep inventories and books, and keep them in a fireproof iron safe in some place not exposed to fire which would ignite or destroy the building in which the property insured is situated, and, in case of loss, to produce such books and inventories for the inspection of the insurer, and in the event of fail-

ure on the part of the insured to produce such books and inventories, for the inspection of the insurer, that the entire policy shall be null and void, is a reasonable and competent provision to insert in and attach to the policy."

"A fire policy required insured to keep books showing a complete record of business transacted, including all purchases, sales, and shipments, both for cash and credit, which should be securely locked in a fireproof safe at night. Insured kept books as required but on the day before the night of the fire, took the cash book home to make some entry, and, when he came back, left it in the pocket of his coat, lying on the counter. He then went on an errand, and did not return that afternoon; and the book accordingly was not put in the safe, and was destroyed in the fire. *Held,* that the policy was breached; the loss of the cashbook being due to insured's negligence." (*Fire Ass'n of Philadelphia v. Calhoun,* 28 Tex. Civ. App. 409, 67 S. W. 153.)

Then if the October, 1907, inventory was not a compliance with the terms of the contract, and no substantial excuse having been offered for the failure of the insured to keep the January inventory, together with the books, in a fireproof iron safe, we must hold that there was no such compliance with the terms of said contract, on the part of the insured, as would warrant a recovery or sustain a judgment on said policy. On the contrary, the policy became void by reason of the noncompliance with its terms by the insured.

As to the second point raised by the demurrer, the reasons as applied to the first will effectually dispose of it, but as to the third point, we are compelled to say that even though the October inventory was a substantial compliance, or even a strict compliance with the terms of the contract as set up in item 3 of the "iron-safe" clause, *supra,* which reads as follows:

"The assured will keep such books and inventory *and also the last preceding inventory* securely locked in a fireproof safe at night and at all times when the building mentioned in this policy or the portion thereof containing the stock described therein, is not actually open for business, or, failing in this, the assured will keep such books and inventories at night and at all such times in some place not exposed to fire which would ignite or destroy the aforesaid building, and in case of loss the assured specifically warrants, agrees and covenants to produce said books

and inventories for the inspection of such company; and in the event of the failure on the part of the assured to keep such books and inventories for the inspection of said company, this entire policy shall become null and void, and such *failure shall constitute a perpetual bar to any recovery thereon"*

—yet, it is seen that it was not only necessary to preserve the inventory on hand at the date the policy was issued, it having been issued within twelve calendar months, but that it was also necessary to preserve the *next preceding inventory as well.* Therefore, no matter how the October inventory is treated, whether sufficient or not, according to the plain terms of the policy, the insured were bound to produce the preceding inventory, or to show good reason for not doing so. No reasonable excuse has been offered, and no substantial compliance with the terms of the policy has been had in that regard. However, we hold that the October inventory was not a sufficient compliance with the terms of the policy to excuse the production of the January inventory, especially when it is admitted by the plaintiffs that such an inventory had been taken, but was negligently permitted by them to remain, together with all the other necessary books, and papers, without the iron safe, and thus be destroyed by the fire which destroyed the stock, and thereby prevented the defendant from securing that evidence as to the actual loss of the insured which the very terms of the contract which they now seek to recover under provided should be done. That the requirement with reference to the keeping of the inventory was in no sense substantially complied with is, we think, equally plain. The argument of counsel, that inasmuch as the policy was written on October 22, and provided that the insured should have thirty days in which to make an inventory, and that only eight days of that time had elapsed at the time of the fire, the terms of the policy had not been breached in that respect, even though it should be held that the October inventory was insufficient, is, in our opinion, untenable when we remember the provisions of section 3 of the "iron-safe" clause which provides that the insured "will keep such books and inventory, and also *the last preceding inventory,*

securely locked, e.c.,   *   *   *   and agrees and covenants to produce said books and inventories," etc.

The "iron-safe" and "three-fourths value" clauses are subject to the same rules of construction as other contracts, and had there been a substantial compliance with their terms we would be bound to uphold the contentions of the insured, but there was no compliance, substantial or otherwise, as has already been seen. *Brown v. Insurance Co.,* 89 Tex. 590, 35, S. W. 1060.

In *Assurance Co. v. Kemenedo,* 94 Tex. 373, 61 S. W. 1102, it is said, in speaking of the "iron-safe" clause:

"The true doctrine upon that question is expressed in the case of *Insurance Co. v. Kearney & Wyse,* 180 U. S. 132 [21 Sup. Ct. 326, 45 L. Ed. 460], in the following language: 'We are of opinion that the failure to produce the books and inventory referred to in the policy means a failure to produce them if they are in existence when called for, or if they have been lost or destroyed by the fault, negligence or design of the insured. Under any other interpretation of the policy the insured could not recover if the books and inventory had been stolen, or if they had been destroyed in some other manner than by fire, although they had been placed in some secure place, not exposed to fire that would reach the store.' Applying the rule of this case, if the inventory was not produced because it was lost or destroyed by some means not constituting fault, negligence or design on the part of the insured, or his employees, and if the insured used ordinary care to preserve the inventory in accordance with the terms of the contract, then the failure to produce would not work a forfeiture of the insurance policy."

In *German-American Ins. Co. v. Fuller,* 26 Okla. 728, 110 Pac. 765, Mr. Justice Kane, in speaking for the court, in discussing a similar proposition said:

"It is not quite clear upon what ground counsel for defendant in error justified noncompliance with that part of the third paragraph of the 'warranty to keep the books and inventories and to produce them in case of los,' which required him to keep such books, inventories, etc., as he had, securely locked in a fireproof safe at night. It is quite clear that this had not been done. In the case of *Southern Ins. Co. v. Parker* [61 Ark. 207, 32 S. W. 507] *supra,* Mr. Justice Riddick, said for the court: 'This court in *Western Assurance Co. v. Altheimer,* 58 Ark. 575,

25 S. W. 1069, said of a similar provision that "the stipulation of the 'iron-safe' clause constituted an express promissory warranty in the nature of a condition precedent," and that a strict compliance with it was necessary. In his work on Insurance, Mr. Wood also says that such promissory warranties must be strictly performed, "and that, too, without reference to the question whether they were material to the risk. The insurer is permitted to judge for himself upon what conditions he will assure a risk, and what is material thereto. The assured cannot defend against a breach thereof upon the ground. * * * The assured has no election, but must stand upon his performance of them." 1 Wood on Fire Insurance, p. 448. * * * However inconvenient it may have been he had expressly agreed that the saloon books should be kept in a fireproof safe at night, or in some place secure from a fire that might destroy the house where the insured goods were kept, and he should have complied with his contract. He failed to do so, and as a result of that failure the books were destroyed by the fire that burned the house. For this reason the judgment against the appellant company cannot be sustained.' "

In the case at bar no excuse is offered for the failure to comply with the terms of the policy in regard to keeping the books and inventory in the iron safe. Instead, the so-called October inventory and the little private ledger (plaintiff's Exhibit D) are offered as substitutes and as a substantial compliance with the term of the policy. The duty of the insured under these clauses has been defined by the Supreme Court of the United States in *Insurance Co. v. Kearney & Wyse, supra,* and from a careful examination of all the facts and circumstances of the instant case we feel that the construction thus placed upon these provisions of the policy is reasonable, and is conclusive on us. We are impressed with the argument of able counsel, that a strict compliance with the terms and conditions of this contract would work unnecessary hardships on the public, etc., but there is another phase of the question, aside from this, that appeals to us, and demands our consideration. No plea of mistake or ignorance on the part of the insured as to the terms of the contract has been made. On the contrary they admit the very facts relied upon by the defendant to avoid the policy, but urge as an excuse that

a substantial compliance with the requirements thereof has been made. This, as has been seen, has already been disposed of adversely to the contention of the insured. When we consider the nature of the insurance business, the dependency of the public on the protection secured thereby, the reliance placed in the companies by the business men of every community, the demands of modern commercial methods, and the ultimate fact that the insured in the end must pay (by his legitimate premiums) not only all losses that occur, together with the cost of operating the business, but also the profits of the stockholders as well, and when we realize that the business offers the greatest opportunities for fraud and deceit, which frequently appeals to the cupidity of unprincipled men, and also that insured, to a very great extent, controls the evidence upon and by which proofs of damage and loss must be ascertained, then we can readily see the reasonableness of these provisions of the contract, and the necessity which requires the insured to protect and preserve the documentary evidence, all made by him, in the first instance, and always in his possession, which will enable the parties to determine with accuracy the amount and character of the loss sustained. In the instant case the insured contracted to keep a set of books, which among other things should show the amount of sales and purchases made. No reasonable man could object to such requirement. They also agreed to keep a cashbook, showing the amount of money taken in, the source from whence it came, and the object and purpose of its expenditure, yet nothing of the kind was preserved, but instead is plaintiff's Exhibit D, a small pocket ledger, showing the net amount, banked for a few days prior to the fire; this, too, after payment of the expense of the business, with other expenditures paid out, over the counter, not explained or accounted for in any wise.

There was an attempt on the part of the insured to show a waiver by the defendant of some of the requirements of the contract, but the effort failed completely. There was also an attempt on the part of the defendant to show that there had been

false swearing on the part of one of the insured, and, in passing, we may safely say that there was not, in the sworn statement made in December by one of the insured, such regard to facts as was demanded, but we agree with counsel for insured that it was necessary to show that the statements were not only false, but were known to be false by the insured when they were made. This was not shown. The evidence as to the value of the stock burned is very unsatisfactory. The testimony of the witness Robertson in our opinion should have been stricken from the record, and taken from the consideration of the jury, as being wholly incompetent, especially in view of his statement to the jury that the stock was worth $18,500, without showing himself qualified to testify, and when interrogated concerning it said he could prove it by the books, and when handed the books in the presence of the jury, and requested to show that fact by them, failed to do so, and on objection by the insured the court refused to require him to do so.

As was said, the entire testimony relative to the value of the stock damaged is of doubtful value. However, these matters do not require our attention, inasmuch as the case must be reversed for other reasons hereinbefore enumerated. It is with some regret that we arrive at this conclusion. However, there is no escape therefrom. In the language of *Assurance Co. v. Kemenedo, supra*:

"The facts of this case show that there may be a very great hardship resulting from this determination between the parties, but it has been said that 'hard cases make bad law.' It is not the province of the court to adjust the construction and enforcement of a contract to the result which may be produced upon the parties, but it is better that those who make hard contracts shall suffer the result than that the law shall be so warped and distorted as to disturb the business of the country, and to render the power of contracting uncertain and unreliable."

For the reasons given, the judgment of the district court of Pawnee county should be reversed, and the cause remanded, with instructions to enter judgment for defendants in error in the sum

of $86, as tendered by the Insurance Company in the court below, all costs to be taxed against defendants in error.

By the Court: It is so ordered.

All the Justices concur.