# MALIN, Respondent, v. MERCANTILE TOWN MUTUAL INSURANCE COMPANY, Appellant.

### St. Louis Court of Appeals, March 29, 1904.

1. **INSURANCE: Act of Insured's Son.** In an action on a policy for fire insurance, an allegation of the answer that the son of the plaintiff filled a stove in the building destroyed, with combustible materials, and thus recklessly caused the loss, stated no defense and was properly stricken out, there being no allegation that plaintiff ordered such act of his son or had notice of it.

2. ——: *Increase of Risk.* Where the insured discovered a joist which was against a flue, to be burning, extinguished the fire, sawed off the charred end of the joist and removed some loose boards which were in contact with the flue, he did not thereby increase the risk, so as to require notice to the insured of the change, or avoid the policy under a clause of the policy which made it void if the hazard should be increased.

3. **PRACTICE: Evidence: Application for Continuance.** In an action on a fire insurance policy, the defendant insurance company was granted two continuances, upon applications sworn to by the agent of defendant, on account of absent witnesses, whose alleged testimony was set out in the applications. The first application stated that two witnesses, named, saw plaintiff set fire to the property, the loss of which was the basis of the suit. The second application stated that two other witnesses were permitted by plaintiff to remove goods from the building on the night of the fire. The depositions of two witnesses, not named in either application, were read at the trial, who testified to the facts set up in the first application, but swore they did not know the witnesses named therein. No one testified to the facts stated in the second application. *Held,* that both applications were admissible when offered in evidence by plaintiff as circumstantial evidence tending to show want of good faith in the defense that plaintiff had caused the fire, and to affect the credibility of the two witnesses whose depositions were read.

4. **INSURANCE: Books of Account.** The purpose of a stipulation in a policy on a stock of goods, requiring the insured to keep a set of books showing a complete record of all transactions, etc., is to furnish data by which to ascertain the amount of goods

Malin v. Insurance Co.

on hand at the time of the fire and estimate with reasonable correctness the amount of the loss; and when this is done, a literal compliance with such a provision is not necessary.

5. ——: Three-Fourths Clause. It is competent for fire insurance companies to fix the measure of damages in case of loss by a three-fourths value clause.

6. ——: ——: Harmless Error. But in an action on a policy, an instruction to the jury which ignores the three-fourths value clause, was harmless error, where the evidence showed the total amount of insurance was less than three-fourths of the value of the property destroyed.

7. PRACTICE: Remarks of Counsel to Jury. Under the circumstances of the case, which are examined, impassioned comment of counsel for plaintiff in his argument to the jury, ·upon the conduct of the defense, held not unwarranted nor prejudicial.

Appeal from Greene Circuit Court.—*Hon. J. T. Neville,* Judge.

AFFIRMED.

*G. W. Watson, Barbour & McDavid* and *Fyke Bros., Snider & Richardson* for defendant.

(1) The court committed error in sustaining plaintiff's motion to strike out that part of defendant's answer which set up as a defense that the fire which occasioned the loss sued for was the result of gross neglect or intent on the part of plaintiff's son and agent, in charge of and associated with plaintiff in the store business. LaForce v. Ins. Co., 43 Mo. App. 518. (2) The applications for continuances filed by the defendant, and the affidavits connected therewith were wholly irrelevant to any issue involved in the cause. It is apparent that they were offered in evidence by plaintiffs and put before the jury for the purpose of creating a prejudice against the defendant in the minds of the jurors, and the trial court committed error to defendant's prejudice in overruling defendant's objection to their admission in evidence. Alcorn v. Railway, 108

Mo. 90; Gubernator v. Rettalack, 86 Mo. App. 184; Bank v. Scalzo, 127 Mo. 185; Connor v. Black, 110 Mo. 136; Pryor v. Railway, 85 Mo. App. 367; Railway v. Oritz, 158 U. S. 334, 39 Law Ed. 1006; Bindbeutel v. Railway, 43 Mo. App. 468; Suttle v. Aloe, 39 Mo. App. 38; Clerk v. Fairley, 30 Mo. App. 335; Walton v. Railway, 40 Mo. App. 544; Baird v. Am. Car Co., 63 Mo. App. 382; McDermott v. Judy's Admr., 67 Mo. App. 647. (3) The policy sued on contained a three-fourths value clause, or condition limiting the defendant's liability to a pro rata proportion of three-fourths of the value of the property destroyed. The instruction given by the court, over defendant's objection, disregards this provision of the contract, which is a valid and binding condition, and instructs the jury that they should find for plaintiff for the amount of defendant's proportion of the full amount of the loss. This was error. Millis v. Ins. Co., 95 Mo. App. 211; Dolan v. Ins. Co., 88 Mo. App. 666; Roberts v. Ins. Co., 94 Mo. App. 142. (4) The fact of the previous fire in plaintiff's store and its damage to, and the changes in consequence thereof in and about the flue in the store building was a circumstance material to and a change in the risk insured. It was plaintiff's duty immediately thereafter to have notified the defendant thereof, and defendant's instruction to that effect should have been given. (5) The condition of the policy requiring and by which insured agreed to keep a set of books, clearly and plainly presenting a complete record of business transacted, including all purchases and sales, and to take a complete itemized inventory as specified, is a valid and binding condition. It is admitted its conditions had not been complied with, so that, defendant's first instruction, refused, should have been given. Gibson v. Ins. Co., 82 Mo. App. 520; Ins. Co. v. Monger & H., 74 S. W. 702; R. & M. v. Ins. Co., 48 S. W. 550; Fire Ass'n v. Calhoun, 67 S. W. 153; Ins. Co. v. Wilkerson, 13 S. W. 1103; Collin v. Ins. Co,

1 Sum. 434; Wood on Insurance, sec. 440; O'Brien v. Ins. Co., 63 N. Y. 111.    (6)   The remarks of plaintiff's counsel, taken by the court stenographer, set out in the bill of exceptions, objected to by defendant, and called to the court's attention, but not rebuked, constituted an unwarranted and unsupported attack on defendant, made for the purpose of prejudicing the jury, and is reversible error. Killoren v. Meehan et al., 68 Mo. App. 212; Gibson v. Zeitig, 24 Mo. App. 65; McDonald & Co. v. Cash et al., 45 Mo. App. 66; Nichols Shepherd Co. v. Metzger, 43 Mo. App. 618; Norton v. Railway, 40 Mo. App. 647.

*T. J. Delaney* for respondent.

(1)   The court did not commit error in sustaining plaintiff's motion to strike out that part of defendant's answer which set up as a defense that the fire was the result of gross neglect on the part of plaintiff's son and agent.    It is not charged that plaintiff was a party thereto or that the occurrence was ever brought to his knowledge. Ins. Co. v. Glasgow, 8 Mo. 713; McGammon v. Ins. Co., 171 Mo. 143; Wertheimer-Swarts v. U. S. Casualty Co., 172 Mo. 135.   The act complained of in no wise contributed to the loss.   Organ v. Ins. Co., 3 Mo. App. 576.    (2)   The several applications for continuances were properly admissible as admissions by defendant.   An examination of these affidavits show that they afford a basis for legitimate inferences of fact by the jury contrary to the defense made in this case. Besides, this testimony is admissible as affecting the credit and weight to be given to the testimony of the witnesses Barr and Bacon.   Bogie v. Nolan, 96 Mo. 85; Padley v. Catterlin, 64 Mo. App. 629; Gubernator v. Rettalack, 86 Mo. App. 189.    (3)   The failure of the court to limit the plaintiff's right of recovery to a pro rata proportion of three-fourths of the value of the property destroyed, if error, was not prejudicial error.

Millis v. Ins. Co., 95 Mo. App. 218. (6) The previous fire was a risk against which defendant insured, and the mere occurrence of such fire can not in reason or law avoid the policy. The policy does not provide for any notice. The only provision in the policy bearing on this point is this: "This entire policy shall be void if the hazard be increased by any means within the control or knowledge of the insured." Whether or not the hazard was increased by the small blaze, or by the change in removing the joist from contact with the flue was a question of fact. This question was fully and fairly submitted to the jury. Dolan v. Town Mutual, 88 Mo. App. 666; Kern v. Ins. Co., 40 Mo. 19; Ritter v. Ins. Co., 40 Mo. 40; 1 Wood on Insurance (2 Ed.), sec. 241. Even if notice were required by terms of policy the question would still be one of fact whether change increased the risk. 1 Wood on Insurance (2 Ed.), sec. 250. And if the fire and consequent repairs or change did not materially increase the risk, such fire need not only not be reported but it might have been purposely concealed without avoiding the policy. 1 Wood on Insurance (2 Ed.), sec. 213; Baldwin v. Ins. Co., 56 Mo. 151. (7) The provision requiring the taking of an inventory and keeping a record of purchases and sales, cash and credit was fully complied with. Burnett v. Ins. Co., 68 Mo. App. 343.

STATEMENT.

On January 13, 1902, plaintiff was a retail dealer in general merchandise at Denlow, Douglas county, Missouri. On that day, defendant, the Mercantile Town Mutual Fire Insurance Company, organized under the laws of the State of Missouri, for an agreed premium paid in cash, issued its policy of insurance to plaintiff insuring him against loss or damage by fire for one year as follows: Two hundred dollars on his two-story frame

building occupied as a retail store; one hundred and fifty dollars on store furniture and fixtures, including show cases and iron safe; fifteen hundred dollars on stock of merchandise while contained in the store. The policy contained the following stipulations:

"*Three-Fourths Value Clause*—It is part of the consideration of this policy, and the basis upon which the rate or premium is fixed, that in the event of loss this company shall not be liable for a greater amount than three-fourths of the actual cash value of the property covered by this policy at the time of such loss, and in case of other insurance, whether policies are concurrent or not, then for only its pro rata proportion of such three-fourths.

"*Inventory and Iron Safe Clause*—It is expressly warranted by the assured: first, that the assured shall take a complete itemized inventory of the stock hereby covered at least once a year during the life of this policy, and unless such inventory has been taken within twelve months prior to the date of this policy, the same shall be taken within thirty days after the date of this policy, or this policy shall be null and void from such date.

"Second—The assured shall keep a set of books which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory provided for in first section of this clause, and during the continuance of this policy . . . and in the event the insured fails to so keep said books and inventories this policy shall be null and void. . . .

"This entire policy shall be void if the hazard be increased by any means within the control or knowledge of the insured."

On February 20, 1902, the store building and its contents, except about one hundred and fifty dollars worth of goods, were destroyed by fire. Plaintiff gave

notice to the company of the fire and made out and delivered to it timely proofs of loss. The defendant company denied all liability on the policy. This suit was brought on the policy to recover the loss.

The petition is in the ordinary form.

The answer is as follows:

"The defendant, for amended answer to the petition of plaintiff, admits that it is a corporation organized under the laws of the State of Missouri, and alleges that it is organized, incorporated and doing business under and by virtue of an act of the Legislature of the State of Missouri, relating to town mutual insurance companies, and is entitled to the benefits and privileges, and subject to the provisions of such act.

"Defendant admits that on the thirteenth day of January, 1902, it made its policy of insurance sued on.

"Further answering defendant alleges that said policy was issued upon a written and printed application therefor, made and signed by M. Malin, wherein it was agreed and warranted that if the conditions and circumstances were changed or risk increased during the term of said policy said insured should notify the company immediately of the same. Otherwise said policy to be void. Defendant alleges that after said policy was issued and before the fire mentioned in the petition and to-wit, on the — day of January, 1902, a fire occurred in said building which was originated through the flue thereof, whereby said building was slightly damaged; that after the fire the said insured caused certain changes to be made in said building which weakened the flue and increased the risk of fire in said building; that it was the duty of plaintiff to have notified this defendant of said fire and have informed defendant of the changes made in said building which increased the said risk as aforesaid; but notwithstanding it was the duty of plaintiff to have so notified defendant, plaintiff never did at any time previous to the

fire mentioned in the petition, give defendant any notice of said first fire or of said changes of said building, by reason whereof defendant says plaintiff is not entitled to recover.

"Further answering, defendant alleges that after said policy was issued, one C. P. Malin, the son of plaintiff, was in charge of said store as plaintiff's agent and employee. That on the evening prior to the fire mentioned in the policy, he built in the stove of said store, which was connected with the flue herein referred to, a fire composed of combustible timbers, which was calculated to increase the danger of fire to said building; that when the attention of said C. P. Malin was called to the fact that such fire was calculated to cause said building and all the goods to be burned, he stated, 'I don't care, let her go to hell.' That said fire was caused by the reckless act of said C. P. Malin. That by said act the risk of fire to said building and property was greatly increased and the fire mentioned in the petition was caused by the conduct of said C. P. Malin and by the defective condition of the flue herein referred to, by reason whereof defendant says plaintiff is not entitled to recover.

"Further answering the defendant alleges it is provided in said application and policy that the applicant shall take a complete itemized inventory of any stock of goods insured, at least once a year during the life of the policy, and unless such inventory has been taken within twelve months prior to the date of the policy, the same shall be taken within thirty days after the date of the policy or the policy shall be null and void from such date. The applicant shall keep a set of books which shall clearly and plainly present a complete record of all business transacted, including all purchases, sales and shipments both for cash and credit from the date of inventory provided in the first policy. The applicant shall keep such books and inventories and

Malin v. Insurance Co.

also the last preceding inventory, if such has been taken, securely locked in a fireproof safe at night and at all times when the building mentioned in the policy is not actually open for business, or failing in this, the applicant shall keep such books and inventories in some place not exposed to a fire which would destroy the aforesaid building, and if the affiant, or applicant fails to do so, said policy shall be null and void.

"Defendant alleges that plaintiff failed to comply with said conditions in said policy in this, that it did not take and preserve an inventory or inventories as required by said policy; that it did not keep a set of books, which clearly and plainly presented a record of all business transacted, including all purchases, sales and shipments, both for cash and credit, as required by said policy, and did not keep such books and inventories in a fireproof safe at night, or when said building was not actually open for business, or in some place not exposed to a fire, which would destroy said building. That the fire mentioned in the petition occurred at a time when said store was not open for business and in the nighttime, by reason whereof defendant says plaintiff is not entitled to recover.

"Further answering, defendant alleges that it was the duty of plaintiff to have used every reasonable effort at and during the progress of said fire to have prevented the destruction of said goods from fire and to have saved as many of said goods as possible and to have preserved them after the fire. Defendant alleges that at the time of said fire, plaintiff, by the exercise of reasonable diligence might, and could have saved a large quantity of said goods, but that he recklessly and willfully failed to do so and knowingly permitted other people to enter said store while said fire was in progress and take and remove therefrom a large quantity of said goods and keep and retain same for their own, by reason whereof plaintiff is not entitled to recover.

"Further answering defendant denies each and every allegation, matter, fact and thing in the petition alleged not herein expressly admitted and having fully answered asks to go hence with its costs."

The clause of the answer, in respect to the actions and conduct of C. P. Malin, was, on motion of plaintiff, stricken out, whereupon the defendant amended its answer by adding the following clause:

"Further answering defendant alleges that the fire mentioned in the petition, which damaged said property, was caused by the willful and intentional act of the plaintiff, for the purpose of destroying said property and of defrauding this defendant."

The new matter in the answer was put at issue by a reply.

Plaintiff offered evidence showing a total destruction by fire of the building and all its contents, except about one hundred and fifty dollars worth of goods, on the night of February 20, 1902. That the building was worth six hundred dollars, and fixtures and show cases about three hundred and seventy-five dollars and the merchandise in the building at the time of the fire from fifty-two to fifty-three hundred dollars. At the time of the fire plaintiff had other insurance of twenty-five hundred dollars on the house and stock of merchandise which has been paid. In August, 1902, plaintiff took an inventory of his stock, which was produced at the trial, showing that $5,395.03 worth of goods and $375 worth of furniture and show cases were then in the store. He also produced at the trial, bills and invoices of all goods he had purchased while in business at Denlow, with the exception of forty or fifty dollars worth of miscellaneous articles purchased for cash from other retail stores. He had no fireproof safe but he testified, that the agent who took his application for the insurance knew at the time the application was made that he had no safe. His books of account and cash sales were

taken to his residence every evening when he closed the store and kept there over night and were at his residence on the night of the fire and were produced at the trial.

Plaintiff seems to be an illiterate man and unacquainted with approved methods of keeping books of account. His account of cash sales, he testified, was kept in the following manner: each morning on opening the store he would count the cash he put in the money drawer for change and drop in a ticket of the amount; at night when he closed the store he would empty the drawer of the cash and ticket, take them to his residence, count the cash and from the total deduct the amount shown by the ticket to have been deposited in the morning and enter the remainder in his cash book as the amount of cash sales for the day. No account was kept of the articles sold, but plaintiff testified he sold on an average profit of twenty per cent, and was making some money in the business.

The chimney or flue in the store was one brick in thickness below the roof. An 8x2 joist butted against the flue about two feet above the point where the stovepipe entered the flue. A day or two after the policy was issued this joist was discovered to be charred and was burning. The fire was extinguished by a couple of buckets of water, and next day plaintiff employed a man to take off the charred end of the joist, disconnect it with the flue and brace it up, and remove some boards that were in dangerous proximity to the flue.

Defendant introduced the depositions of two witnesses, Bacon and Barr, who stated they were travelling over Douglas and adjoining counties prospecting, in February, 1902; that on the night of February 20, 1902, they went to plaintiff's store to buy some tobacco; that when they got there they found the door fastened, but on looking through a window they saw plaintiff near a lot of shavings and broken boxes piled on the floor of the store, and saw him strike a match and set the pile on

fire; that being strangers they ran to their camping place, hitched up their team and drove away. The force of the testimony of these witnesses was greatly weakened, if not entirely neutralized, by their cross-examination and by evidence offered in rebuttal.

The court of its own motion gave the following instruction to the jury:

"The plaintiff sues the defendant on a policy of fire insurance. The issuance of the policy is admitted and the evidence shows and it is conceded that the fire occurred. There are two defenses, which the evidence tends to show, either of which is sufficient to defeat a recovery by plaintiff if proven by the evidence. One of these defenses is the claim that there was a change in the conditions in and about the premises and that plaintiff failed to notify defendant of such change. With reference to this you are instructed that if there was a material change in the premises before the fire, that is, if any damage occurred to the building or any repair thereof was made which in any way might be considered as increasing the risk or danger of fire, or if any alteration thereof was made which might reasonably be considered as increasing the risk or danger of fire, or if any alteration thereof was made which might reasonably be considered as affecting the risk, then the plaintiff was compelled to notify the defendant thereof, and, having failed to do so, the jury if they find such aforesaid alterations or changes to have occurred, should find the issues in favor of the defendant. The other defense above mentioned is the claim that plaintiff intentionally caused the fire for the purpose of destroying the building and goods. If you find from the evidence that plaintiff intentionally caused the store to be set on fire then your verdict should be for the defendant. The burden of proving these defenses is on defendant, and it must be shown by a preponderance or greater weight of the evidence, and in case they are not

so established your verdict should be for plaintiff. If you find for plaintiff you will ascertain the amount of his damage in the following manner: Ascertain the loss as to the building: If this exceeds $400 then you will allow plaintiff $200 thereon. If the total loss to building is less than $400 then you will allow paintiff one-half of such total loss. Ascertain the total loss as to the furniture and fixtures. If this equals or excels $250 allow plaintiff $150. If it is less than $250 allow plaintiff only three-fourths of such total loss.

"Ascertain the total loss as to the stock of goods. If this equals or exceeds $3,700 allow plaintiff $1,500. If the total loss to goods is less than $3,700 allow plaintiff only fifteen thirty-sevenths of such total loss.

"You are the sole judges of the credibility of the witnesses and of the weight to be given to their testimony. In passing upon the weight to be given to the testimony of the witnesses you are to consider their demeanor on the stand, their interest, bias or prejudice in the case, if any appear, their relationship to the parties, the reasonableness or unreasonableness of their testimony, their opportunities for knowing the facts about which they testify and any and all other facts and circumstances which in your judgment would add to or detract from their credibility. If you find for plaintiff you will allow six per cent interest on the account from sixty days after the receipt by defendant of the proofs of loss."

At the instance of the defendant the court gave the following instructions:

"1. The court instructs the jury that you should not disregard the testimony of witnesses given by depositions for reason that such witnesses are not present and testifying in the case, but you should consider and weigh such evidence by the same rules as other evidence in the case.

"2. The court instructs the jury that one of the

questions submitted to them is whether the fire originated by any act, design or procurement of the plaintiff or through any evil practice done or suffered by him or by his privity or with his consent. In deciding this question every fact and incident connected with the fire and subsequent transactions as detailed in evidence before them and decide according to what they consider the most probable conclusion. The rule in civil cases like the present is different from what it is in criminal cases. In criminal cases the question is as to the guilt or innocence of the crime and there the jury must be satisfied that the offense was committed beyond a reasonable doubt by the parties accused. In criminal cases if any doubt remains in the minds of the jury they are bound to give the accused the benefit of such doubt, but in civil cases like the present there is no question whether any crime has been committed. The question in this case is merely a question of greater or less probability and the jury in order to find a verdict for the defendant need not be satisfied of the complicity of the plaintiff in the burning in any other way or with any different degree of satisfaction than if the question were an ordinary question in a civil case.''

The court refused the following instructions asked by defendant:

''1. The court instructs the jury that under the pleadings and evidence in this case plaintiff is not entitled to recover and your verdict must be for defendant.

''2. The court instructs the jury that if you find from the evidence that after the policy sued on was issued and before the fire mentioned in the petition another fire occurred in said building, then it became the duty of the plaintiff immediately to notify defendant of such previous fire, and if plaintiff failed to give defendant notice of said first fire prior to the second fire, plaintiff is not entitled to recover.

''3. The court instructs the jury that if you believe

and find from the evidence that plaintiff intentionally caused the fire which destroyed the building he is not entitled to recover and you ought to find for the defendant.''

The verdict was for plaintiff in the sum of nineteen hundred and sixty-one dollars. A motion for new trial proving of no avail, defendant appealed to this court.

BLAND, P. J. (after stating the facts as above.) —

1. There was no error in striking out that part of the answer in respect to what plaintiff's son did in plaintiff's absence; it was not alleged that he ordered or directed the stove to be filled with combustible material at night or that he ever had any knowledge or notice that it had been done. Under no theory of law or justice, is he chargeable with the alleged wrongful act of his son. Wertheimer-Swarts Shoe Company v. U. S. Casualty Company, 172 Mo. 135.

2. Under the clause of the policy, to-wit: ''This policy shall be void if the hazard be increased by any means within the control or knowledge of the insured,'' the policy was not forfeited by the sawing off of the charred end of the joist and removing boards that were in close contact with the flue; by removing them, the evidence shows, the hazard was diminished rather than increased, and the plaintiff was not required to give notice of the alteration. Baldwin v. Ins. Co., 56 Mo. 151.

3. Defendant procured two continuances on account of the alleged absence of material witnesses. In the first one, it was alleged that Henry Miller and A. J. Clark, one alleged to be a resident of the State of Kansas, and the other of Grove, Indian Territory, were absent and if present would swear that they saw what the witnesses William Bacon and E. J. Barr testified by deposition they saw, to-wit, plaintiff set fire to boxes in his store on February 20, 1902. This application was

sworn to by W. C. West, agent of defendant. The second application alleged that W. H. Graham and wife, and James E. Graham, who had formerly resided in Denlow, but had removed therefrom, if present would swear that they were present on the night of the fire and would swear that W. H. Graham was permitted by plaintiff to remove certain goods from the building and told that he might receive and retain the goods. None of these witnesses testified at the trial, nor were their depositions taken or their absence accounted for. It was shown that West, the agent of defendant, had been active in hunting up witnesses for the defendant; that he discovered Bacon and Barr and was present at the taking of their depositions. Over the objection of the defendant, plaintiff was permitted to read both applications as evidence in rebuttal. This ruling of the court is assigned as error. There are no admissions against the interest of defendant in either of the applications and they were not offered for the purpose of showing any such admissions; but were offered in rebuttal for the purpose of showing want of good faith in the defense and as affecting the credibility of defendant's witnesses, Bacon and Barr. If they had that tendency it was not error to admit them; if not, then the reading of them to the jury was error, and prejudicial error at that. It will be noticed in the first application that neither Bacon or Barr is mentioned, but Miller and Clark are the witnesses and the persons named who would swear to the facts which Bacon and Barr ultimately swore to. They (Bacon and Barr) both testified that neither of them ever went under the name of Miller or Clark, so it appears that defendant's agent, West, was mistaken in one or two things; mistaken in the names of his witnesses when he made the affidavit for a continuance or mistaken as to what they would swear and subsequently discovered his error and then discovered Bacon and Barr whose depositions, tending to

establish the defense, were procured. This discovery we can infer was made after the second continuance and only a short time before the day set for the trial of the cause, as the depositions were not taken until on the very eve of the trial; all of which looks suspicious to the man of average experience in the trial of law suits. The suspicion is that Bacon and Barr were "trumped up witnesses," and we think the affidavits were circumstantial evidence tending to show that Bacon and Barr were not worthy of credit.

4. The inventory required to be made once a year was made in August previous to the fire. It contained an itemized account of the merchandise then on hand and furnished the defendant a full and detailed account of the merchandise in the store at the time it was made, the bills of what had been subsequently bought and put in the store, and showed all the additions made to the stock after the inventory was taken. But there was no itemized account of what had been sold for cash, no bill of particulars. The amount of cash taken in was entered daily in a book kept for that purpose and the aggregate of cash taken in was shown to be nineteen hundred and forty-nine dollars. The sales on credit were shown to have been $147.45. The average per cent of profit at which plaintiff sold was said by him to be twenty per cent above the cost price, hence all the data was present from which an approximately correct estimate of the contents of the store at the time of the fire could have been readily made. But it is contended that this was not a compliance with the requirements of the policy in respect to keeping a set of books. That requirement reads as follows: "The assured shall keep a set of books which shall clearly and plainly present a complete record of business transactions, including all purchases, sales and shipments both for cash and credit from date of invoice." A literal compliance with this provision

of the policy would require the assured to record each article sold, its cost, the price sold for, and the name of the purchaser. We do not think a failure to comply literally with this provision of the policy should work a forfeiture. The purpose of the requirement was that in case of loss or damage the assured would have kept such book accounts of his invoices, purchases and sales as would show the amount of goods on hand at the time of the fire and thus furnish data from which to make a reasonably correct estimate of the loss or damage. We think the plaintiff, by the production of the invoice taken in August, previous to the fire, his bill of purchases after the invoice, his daily cash sales and sales on credit made after the taking of the invoice, furnished the data by which the amount and value of the goods in the store at the time of the fire could have been reasonably estimated and that he ought not to be held to have forfeited his policy for having failed to literally comply with the clause of the policy under consideration.

5. The policy contained a three-fourths value clause. The instruction given by the court in respect to the measure of damages ignored this clause. It is competent for a fire insurance company and the assured to fix the measure of damages in case of loss or damage by fire. Millis v. Ins. Co., 95 Mo. App. 211; Roberts v. Ins. Co., 94 Mo. App. 142; Dolan v. Ins. Co., 88 Mo. App. 666. But it is contended by plaintiff that this error was non-prejudicial, for the reason the evidence shows that three-fourths of the value of the property destroyed exceeds the total amount of all the insurance. The total insurance on the building was four hundred dollars, on fixtures two hundred and fifty dollars, on the stock of merchandise thirty-seven hundred dollars. The evidence shows the loss on the building to have been six hundred dollars, on fixtures, three hundred and seventy-five dollars, on stock, from fifty-two to fifty-three hundred dollars. Three-fourths of the loss on the building

would be four hundred and fifty dollars, or fifty dollars in excess of the total insurance. Three-fourths of the loss on the stock would be from thirty-eight hundred and fifty-five dollars to thirty-nine hundred dollars, or from one hundred and fifty-five to two hundred dollars in excess of the total amount of the insurance. Three-fourths of the value of the fixtures would be $281.25 or $18.75 in excess of the total amount of the insurance. We agree that the error in the instruction in respect to the measure of damages was non-prejudicial.

6. The closing address of plaintiff's attorney to the jury is incorporated in the bill of exceptions. It is too lengthy to be copied in this opinion. He traveled out of the record, objections were made, the court reprimanded the counsel, and the objectional comments were withdrawn. Afterwards the counsel, in a forcible and impassioned manner, commented on the conduct of the defense and referring to the allegations in the answer charging plaintiff with incendiarism, appealed to the jury to vindicate him by finding a verdict in his favor. An examination of the whole record does not convince us that this line of argument was wholly unjustifiable. The trial court who heard all the arguments of counsel in the case, was in a much better position to know whether or not the jury were improperly influenced than we are, and having found they were not, we do not think the argument of counsel is of a character wholly unwarranted, nor can we come to the conclusion that it prejudiced the jury. Wendler v. People's House Furnishing Company, 165 Mo. 527. The verdict is supported by the overwhelming weight of the evidence and we do not think it should be disturbed.

The judgment is affirmed. *Reyburn* and *Goode*, *JJ.*, concur.