DICKEY v. SPRINGFIELD FIRE & MARINE INS. CO. OF SPRINGFIELD, MASS.

Nos. 5849-5852. Opinion Filed January 11, 1916.

Rehearing Denied March 28, 1916.

(156 Pac. 204.)

1. **INSURANCE—Fire Policy—Keeping of Books—Substantial Compliance.** A substantial compliance by the insured with the clause in a policy of insurance, requiring him to keep a set of books, is all that the law requires.

2. **SAME—Iron-Safe Clause.** Under an unbroken line of decisions in this state, all that is necessary to be shown under the iron-safe promissory warranty in a policy of insurance is a substantial compliance with the provisions of said warranty.

3. **SAME—Books and Inventory.** The evidence in these cases carefully examined, and held to be sufficient to show that the assured sufficiently complied with the warranty to keep a set of books, and to entitle the assured to recover upon each of the said policies sued upon.

(Syllabus by Collier, C.)

*Error from District Court, Bryan County;*

*Jesse M. Hatchett, Judge.*

Four actions by R. P. Dickey, as trustee in bankruptcy of the estate of Stephens Bros. & Stewart, bankrupts;

one against the Springfield Fire & Marine Insurance Company of Springfield, Mass., one against the Phoenix Insurance Company of Hartford, Conn., one against the Liverpool & London & Globe Insurance Company of Liverpool, England, Limited, and the other against the Home Insurance Company of New York. Judgments for the defendants in the two actions first mentioned, judgments for plaintiff in the other actions, and the unsuccessful parties bring error. Judgments adverse to plaintiff reversed and remanded, and the judgments for plaintiff affirmed.

*Scothorn, Caldwell & McRill,* for the Insurance Companies.

*Hatchett & Ferguson, Utterback & MacDonald,* and *V. B. Hayes,* for R. P. Dickey, trustee.

Opinion by COLLIER, C. These four cases were instituted by R. P. Dickey, as trustee in bankruptcy of the estate of Stephens Bros. & Stewart, bankrupts, against the four insurance companies hereinafter named, to recover upon the hereinafter described policies of insurance, issued to said Stephens Bros. & Stewart upon their stock of goods, wares, and merchandise, and store fixtures in the town of Kenefick, Okla. Said cases were consolidated and tried together in the district court of Bryan county, and on appeal to this court said cases were, by order of this court, consolidated, and will be jointly considered. Hereinafter the parties will be referred to, respectively, as the "insured" and the "companies."

The material evidence upon which these cases were tried, so far as the issue involved in this appeal is concerned, is substantially as follows: That the said Steph-

ens Bros. & Stewart held the following described policies of insurance on their stock of goods, wares, merchandise, and store and office fixtures in the town of Kenefick, Okla., viz., policy issued by the Phoenix Insurance Company, dated March 4, 1912, in the sum of $4,000, $500 of which was insurance on the store and office fixtures; policy of Springfield Fire & Marine Insurance Company, dated March 4, 1912, in the sum of $4,000, $500 of which was on the store and office fixtures; policy issued by the Liverpool & London & Globe Insurance Company, dated September 2, 1912, in the sum of $5,000; policy issued by the Home Insurance Company, dated July 5, 1912, in the sum of $3,500. Each of said policies ran for a period of one year from the dates of their respective issue. Said policies were offered in evidence and read to the jury. On the 23rd day of December, 1912, and while each of said policies was in force and effect, the said stock of goods, wares, and merchandise and store and office fixtures were totally destroyed by fire. It appears that said firm kept books of account during the life of said business, and had an inventory of said property at the time said firm purchased the business from one Colbert; that the said firm had taken inventories since said purchase, one of said inventories being taken after March 4, 1911; and that, being afraid that the safe said firm had would not properly protect the books from fire, the books of said firm were each night taken to the room of one of the partners, who roomed at a hotel about one block from their place of business; and that the same were burned when the said hotel burned on the 29th day of November 1912; and that by negligence, the firm's journal covering the period of time between March 4, 1912, and May 23,

1912, was burned in the hotel fire; and that the old ledger was left in the store by the bookkeeper and burned in the fire that destroyed the store. It further appears that the ledger, commencing March 4, 1912, and ending December 1, 1912, was either in the store when it burned, or in the hotel when it burned; that the book marked "Journal C," which was introduced in evidence, covered the business of said firm from May 23, 1912, to December 10, 1912; and that the ledger introduced in evidence covered the business of said firm from December 2d to the time of the fire; that because the inventories of said firm had been burned in the fire which burned the hotel, said firm, after the fire which burned the hotel, and prior to the burning of the store, took an inventory of said stock of goods, wares, merchandise, and fixtures, which inventory was introduced in evidence. It was admitted by the attorneys for the parties that the inventory introduced in evidence shows the stock to have inventoried $16,464.31, and the fixtures to have inventoried $2,050.90.

It was further shown in evidence that after said last-named inventory had been taken, and prior to the fire which destroyed the said stock of goods and fixtures, goods and merchandise of the value of $700, "with profit taken off," had been sold, and mercandise added to the stock in the sum of $360.35; that said stock of goods, wares, and merchandise, at the time it was burned, was worth in cash 80 per cent. of value, as shown in the inventory in evidence, and that the fair cash value of the store and office fixtures at the time they were burned was something like $2,000. It was further shown in evidence that the cash handled by said firm was kept by a cash register and cash register books, which said books

were burned, and the account kept by the bank with which the firm did business, and that no other cash account was kept than as stated; that the said bank books which were in evidence show a very large amount of cash passing through said bank, and from said bank books it was almost impossible to determine the cash sales of said firm.

It is further shown in evidence that by taking the inventory offered in evidence, and deducting therefrom 20 per cent. of its value, and deducting from the remainder the $700 sold since the said inventory was taken, and adding to the result thus found the $360.35, the value of the goods added to the stock since the taking of said inventory, the value of said stock and fixtures covered by the said policies of insurance and destroyed by said fire could be readily and practically determined, and a result reached within a few dollars of the actual value of said property.

At the close of the evidence, the Springfield Fire & Marine Insurance Company offered to confess judgment in the sum of $500, under the first item in its policy, to wit, the item covering the furniture and fixtures, and demurred to the evidence as to the second item, to wit, item covering stock of merchandise, etc., upon the ground that plaintiff's evidence failed to support the material allegations of his petition, and failed to prove, or tend to prove, facts sufficient in law to entitle plaintiff to any relief whatsoever as to said $3,500 item, covering the stock of merchandise, etc. The Phoenix Insurance Company offered to confess judgment in the sum of $500 and interest on the item covering store and office fixtures, and demurred to plaintiff's evidence as to the $3,500 item, covering the stock of merchandise, etc., upon the same ground and for the same reason stated in the demurrer of the Spring-

field Fire & Marine Insurance Company. Defendant Liv-· erpool & London & Globe Insurance Company demurred to plaintiff's evidence, for the reason and upon ·the same ground as stated heretofore in the second ground of· demurrer of the Springfield Fire & Marine Insurance Company, and defendant Home Insurance Company demurred to plaintiff's evidence for the same reason stated in the second ground of the demurrer of the said Springfield Fire & Marine Insurance Company. The court sustained the respective demurrers of the Springfield Fire & Marine Insurance Company and the Phoenix Insurance Company to the evidence, to which both parties to this appeal duly excepted, and overruled the respective demurrers of the Liverpool & London & Globe Insurance Company and the Home Insurance Company to the evidence, to which action said companies duly excepted. Thereupon judgment was rendered against the Springfield Fire & Marine Insurance Company in the sum of $507.05, and judgment against the Phoenix Insurance Company for $507.05, and judgment against the Liverpool & London & Globe Insurance Company for $3,314.40, and judgment against .the Home Insurance Company for $2,320.15, with interest on each of said judgments at the rate of 6 per cent. per annum.

Motions for new trials were filed by plaintiff in the case against the Springfield Fire & Marine Insurance Company and against the Phoenix Insurance Company. Motions for new trials were filed by defendants Liverpool & London & Globe Insurance Company and the Home Insurance Company. Each of said motions for new trials was overruled and exceptions duly saved. To reverse said several judgments, this joint appeal is prosecuted.

It is admitted by all the parties to these several appeals that the sole question to be determined is this:

"Was there a substantial compliance by the insured with the promissory warranty, commonly designated as the iron-safe and the book warranty clauses?"

It is further admitted in brief of the several companies that under the authority of *Liverpool & London & Globe Insurance Co. v. Kearney*, 180 U. S. 132, 21 Sup. Ct. 326, 45 L. Ed. 460, which rule has been adopted by this court in *German Alliance Insurance Co. v. Newbern*, 25 Okla. 489, 106 Pac. 826, 28 L. R. A. (N. S.) 337, that the sole question to be considered is as to whether or not the insured substantially complied with the requirements of said warranty with reference to the keeping of a set of books.

In *Scottish Union & National Ins. Co. v. Moore Mill & Gin Co.*, 43 Okla. 370, 143 Pac. 12, Mr. Justice Turner, speaking for this court, says:

" * * * The question for us to now determine (referring to the iron-safe clause) is whether the evidence reasonably tends to prove that this condition in the policy was performed by the insured. It is a general rule that a substantial compliance with this warranty is sufficient. *German-Amer. Insur. Co. v. Fuller*, 26 Okla. 722, 110 Pac. 763; *Shawnee Fire Insurance Co. v. Thompson*, 30 Okla. 466, 119 Pac. 985; *Home Insur. Co. v. Ballard*, 32 Okla. 723, 124 Pac. 316. Also, as stated in 2 Cooley's Briefs on Life Insurance, page 1825, it is a general principle that the purpose of the clause is accomplished when the insured produces data from which the amount and value of goods in stock at the time of the fire can be reasonably ascertained. The same authority states, at page 1822, that the requirements of the warranty are met when the insured 'shall keep such books in such a manner as they shall constitute a record of business transactions

which a person of ordinary intelligence, accustomed to accounts, can understand.' See, also, *Malin v. Mer., etc., Ins. Co.,* 105 Mo. App. 625, 80 S. W. 56."

The record fails to show any objection to the inventory in evidence, taken just prior to the fire, or as to the amount of goods that had been sold since the inventory had been taken, or the amount of merchandise added to the stock since the inventory was taken, nor is it contended that said data did not practically show the loss sustained by the insured by reason of the fire. In short, the defense offered by said several companies is technical in the extreme. Certainly plaintiff had a right to establish his loss by any competent evidence; and this case falls squarely within the general rule that the purpose of said iron-safe clause was accomplished when the insured had produced data from which the value of the merchandise in stock and fixtures at the time of the fire could be accurately ascertained, and kept books, showing the business of the firm, but failed to produce the same because said books had been destroyed by fire at a place where the insured had a right to keep them. This court, in *Hanover Fire Ins. Co. v. Eisman,* 45 Okla. 639, 146 Pac. 214, quotes with approval from the case of *Malin v. Mer. Town Mut. Ins. Co.,* 105 Mo. App. 625, 80 S. W. 56, the following:

"The inventory required to be made once a year was made in August previous to the fire. It contained an itemized account of the merchandise then on hand, and furnished the defendant a full and detailed account of the merchandise in the store at the time it was made, the bills of what had been subsequently bought and put in the store, and showed all the additions made to the stock after the inventory was taken. But there was no itemized account of what had been sold for cash, no bill of particulars. The amount of cash taken in was entered daily in a book kept for that purpose, and the aggregate of cash

taken in was shown to be $1,949. The sales on credit were shown to have been $147.45. The average per cent. of profit at which plaintiff sold was said by him to be 20 per cent. above the cost price, hence all the data was present from which an approximately correct estimate of the contents of the store at the time of the fire could have been readily made. But it is contended that this was not a compliance with the requirements of the policy in respect to keeping a set of books. That requirement reads as follows: 'The assured shall keep a set of books which shall clearly and plainly present a complete record of business transactions, including all purchases, sales and shipments both for cash and credit from date of invoice.' A literal compliance with this provision of the policy would require the assured to record each article sold, its cost, the price sold for, and the name of the purchaser. We do not think a failure to comply literally with this provision of the policy should work a forfeiture. The purpose of the requirement was that in case of loss or damage the assured would have kept such book accounts of his invoices, purchases, and sales as would show the amount of goods on hand at the time of the fire, and thus furnish data from which to make a reasonably correct estimate of the loss or damage. We think the plaintiff, by the production of the invoice taken in August, previous to the fire, his bill of purchases after the invoice, his daily cash sales, and sales on credit made after the taking of the invoice, furnished the data by which the amount and value of the goods in the store at the time of the fire could have been reasonably estimated, and that he ought not to be held to have forfeited his policy for having failed to literally comply with the clause of the policy under consideration."

In the instant case it is difficult to imagine how the companies were placed at any disadvantage by reason of the failure of the insured to keep a separate cashbook of his transactions, as the inventory, which was in evidence, together with the statement as to the amount of sales

subsequent thereto, and the additions to said stock, furnished unquestioned data from which to ascertain the loss incurred by the fire.

It is further insisted by the companies that there was a failure to keep any record from the 4th day of March to the 23d day of May, 1912, of the affairs of said insured; but this contention, we think, is not supported by the evidence. The uncontradicted testimony of a member and manager of the firm was that books were kept during the entire life of the business. It is true that the evidence disclosed that by the negligence of the bookkeeper, a journal covering the period from December 10th to the time of the fire was destroyed in the fire that destroyed said stock and fixtures; but we think that such a slight technical violation of the promissory warranty as to keeping and producing a complete set of books should not work a forfeiture of the policies, or either of them. We are therefore of the opinion that the court erred in sustaining the demurrers of the Springfield Fire & Marine Insurance Company and the Phoenix Insurance Company to the evidence, and that the court did not err in rendering the judgments rendered against the Liverpool & London & Globe Insurance Company and against the Home Insurance Company.

It follows that the judgment of the trial court in the case against the Springfield Fire & Marine Insurance Company and in that against the Phoenix Insurance Company should be reversed and remanded, and that the judgments of the trial court against the Liverpool & London & Globe Insurance Company and against the Home Insurance Company should be affirmed.

By the Court: It is so ordered.