## SUN INSURANCE OFFICE et al. v. NEUMANN.

No. 19462. Opinion Filed Dec. 9, 1930.

Rehearing Denied March 24, 1931.

Rittenhouse, Lee, Webster & Rittenhouse, for plaintiffs in error.

Dale, Brown & Hoyland, for defendant in error.

TEEHEE, C. The parties to this cause appear in the reverse of their trial positions. Their business relationship was that of insurer and insured. We shall so refer to them, or according to their trial positions, or by name, as may be convenient.

H. M. Neumann was a grocery merchant located and doing business in the city of Guthrie. On March 15, 1925, the Sun Insurance Office insured Neumann's stock against loss by fire in an amount not to exceed the sum of $800, this being evidenced by its one year policy of insurance. On March 26, 1925, the Norwich Union Fire Insurance Society, Limited, insured the same stock against such loss in an amount not to exceed the sum of $2,000, which likewise was evidenced by its one year policy of insurance.

On the night of March 5, 1926, the insured's stock of goods was totally destroyed by fire. Due notice of the loss was given to the insurers who placed the matter of adjustment of the loss in the hands of their adjuster, the Fuller Adjustment Company of Oklahoma City.

Failing to secure adjustment of his loss after repeated efforts, Neumann, on August 26, 1926, sued the insurance companies by separate actions. Except as to parties defendant and the amount of their contractual liabilities, the pleadings of the parties were identical. By his petition, plaintiff alleged his loss in the invoice value of his stock at the date of the fire, this being stated therein at $3,631.04, and sought judgment against each defendant in the maximum amount of their policy of insurance, for that he on his part had complied with the terms and provisions thereof.

Defendants each denied liability on several grounds. One of the grounds relied on as absolving them from all liability, and the one here to be noticed, was plaintiff's alleged breach of the so-called iron safe clause contained in each policy of insurance. The clause is identical as to each policy, and provides, to wit:

"It is made a condition of this insurance:

"(1) That the assured under this policy shall take an inventory of the stock and other personal property hereby insured at least once every 12 months during the term of this policy, and unless such inventory has been taken within one year prior to the date of this policy, one shall be taken in detail within 30 days thereafter.

"(2) That the assured shall keep a set of books showing a complete record of business transacted, including all purchases and sales both for cash and credit.

"(3) That the assured shall keep such books and inventory securely locked in a fireproof safe at night, and at all times when the store mentioned in the within policy is not actually open for business, or in some secure place not exposed to a fire which would destroy the building where such business is carried on.

"(4) That in case of loss the assured shall produce such books and last inventory."

The actions were consolidated and tried as a single suit before a jury.

Plaintiff rested his right of recovery on evidence saliently showing that he kept books of his business transactions, which, during nonbusiness hours, he kept at his home. On the date of the fire these books, except his inventory record, were inadvertently left in the store building and were destroyed by the fire. By reason of such loss plaintiff scheduled the invoice value of his stock at the date of the fire by a memorandum statement which we summarize as follows:

December 27, 1925, inventory
value _____$3,409.69
Stock additions intervening inventory and loss _____ 1,994.25

Gross stock value _____$5,403.94
Sales intervening inventory and
loss _____ 1,772.90

Net invoice value of stock loss___$3,631.04

To establish the inventory schedule, the record entries of the last inventory were introduced in evidence.

The amount of $1,639.84 of the stock addition schedule was shown by copies of invoices certified to by the parties from whom the goods were purchased. The amount of $140.15 of that schedule was supported by oral evidence of seller and purchaser. In this relation insured testified that the stock addition accounts were paid by checks. A number of such checks showed to have been for other matters, and a number in relation to particular accounts covered by invoices did not balance therewith.

To support the schedule of sales, insured introduced in evidence the bank's record of his deposit account. This showed deposits aggregating $2,401.72. The banker testified that he had no way of showing the source of the monies deposited by plaintiff. This schedule was set out in the memorandum statement as monies deposited with the bank in the sum of $2,241.30, from which plaintiff deducted the amount of $468.40, as monies derived otherwise.

Plaintiff also testified that his family table was supplied from the store for the time intervening the inventory and loss without making a record thereof, which expense was estimated at not more than $1 per day; that the family cash for such time was supplied from the cash drawer, the record of which was burned, but that no unusual expense was thus paid, and that the family did not spend very much money, no estimate being made of the amount thereof.

At the close of plaintiff's evidence, defendants demurred thereto. Upon the overruling of their demurrer, defendants moved for a directed verdict in their behalf. Failing in this, defendants announced "rest." Upon inquiry by the court if they had any instructions to offer, defendants renewed their request for a directed verdict. Thereupon plaintiff moved for a directed verdict in his behalf. Upon inquiry as to the amount of the loss shown by the evidence, the court sustained plaintiff's motion and directed the jury to return a verdict for plaintiff in the principal sum of $2,704.65 (the manner of computation thereof not being detailed in the record), with $201.35 as interest from the date of the filing of suit, or a total of $2,906. Under the judgment of the court rendered on the verdict, the liability of the defendant Sun Insurance Office was fixed at $830.28, and that of the defendant Norwich Union Fire Insurance Society, Limited, at $2,075.70, with the costs divided equally between them.

Defendants complain of the judgment under three assignments of error which they resolved into two propositions. These they state, to wit:

"The evidence of plaintiff showed a violation of the 'iron safe' clause of the policy. Therefore, the demurrer to the evidence and the motion for directed verdict in favor of defendants should have been sustained.

"If the trial court properly overruled defendants' demurrer and motion for directed verdict, then the question as to whether plaintiff had complied with the 'iron safe' clause of the policy and the question of the value of the property destroyed were questions of fact for the jury, and it was error to direct a verdict for plaintiff and fix the amount thereof."

As both propositions go to the sufficiency of the evidence to sustain the judgment, they will be considered together.

As noted, the iron safe clause required the insured to take an inventory at or within a time stated, to keep a set of books showing a complete record of his business transactions, and keep both the inventory and books in a fireproof safe at all times when the store was not actually open for business, or in some secure place not exposed to a fire which would destroy the building in which the business was carried on, and, in the event of loss of the property insured, to produce both the inventory last taken and the books of account. In substance, the

clause may be said to be standard among the insurance fraternity.

A standard author says that "the object of the iron safe clause is to facilitate the ascertainment of the extent of the loss" in that event, and "to prevent the perpetration of fraud by the insured as to the quantum and value of the goods destroyed." 3 Cooley's Briefs on Insurance (2nd Ed.) 2796.

In the construction and application of the clause, the adjudications are not in harmony. In certain jurisdictions the rule of strict compliance is followed, and, in others, the rule of substantial compliance obtains, with the weight of authority sustaining the latter. 3 Cooley's Briefs on Insurance (2nd Ed.) 2802; 5 Couch on Insurance, 3583, sec. 1026. In this jurisdiction, the latter rule obtains. Dickey v. Springfield Fire & Marine Ins. Co., 56 Okla. 616, 156 Pac. 204; Royal Ins. Co., Ltd., v. Scritchfield, 51 Okla. 523, 152 Pac. 97; State Mutual Ins. Co. v. Green, 62 Okla. 214, 166 Pac. 105, L. R. A. 1917F, 663. It may be observed that in the greater number of cases in the latter relation, the question was as to the sufficiency of the records kept and produced to meet the rule of substantial compliance.

The rule of substantial compliance has been applied to cases where the insured had complied with the requirements of the iron safe clause in the taking of an inventory and the keeping of books, and during non-business hours had kept the same either in a fireproof safe, or in some secure place not exposed to a fire which would destroy the building in which the business was conducted, though on the date of the loss he by inadvertence left a part of such records in the building, contrary to the safety provision, which were destroyed by the fire causing the property loss, and the insured produced such of the books of the business as were preserved and supplied the missing information by other satisfactory means from which, together with the books produced, the insurer was enabled to ascertain with reasonable certainty the amount of the insured's loss.

19 Cyc. 764, following a discussion of the clause, states the rule, to wit:

"If the insured has complied with the requirements of taking an inventory and keeping books, the fact that some of such books were destroyed will not invalidate his policy where he is able to supply the missing information by other satisfactory means."

The principle has found application in this jurisdiction. Scottish Union & National Ins. Co. v. Moore Mill & Gin Co., 43 Okla. 370,

143 Pac. 12. For its application in other jurisdictions, see Old Colony Ins. Co. v. Schultz & Co., 7 Ohio App. 469; Carp v. Queen Ins. Co., 116 Mo. App. 528, 92 S. W. 1137; McNutt v. Virginia Fire & Marine Ins. Co. (Tenn. Ch. App.) 45 S. W. 61; Niagara Fire Ins. Co. v. Heflin, 22 Ky. L. Rep. 1212, 60 S. W. 393.

In the Old Colony Insurance Company Case, supra, in which the facts were substantially the same as here, the syllabus reads as follows:

"The owner of a stock of merchandise does not forfeit his claim to indemnity in a policy of fire insurance which requires him to take an inventory of his stock of goods once a year and keep a set of books showing a complete record of all purchases and sales, either for cash or on credit, and to keep the last inventory and such books in a fireproof safe at night, or in some secure place not exposed to fire which would destroy the building in which such business is carried on, where the insured had taken an inventory and kept the books required, and was accustomed at night to remove them from the building as required by the policy, but on the night of the fire, through the forgetfulness of an employee they had been left in the building and burned, if the insured is able and willing to produce the original pencil copy of the inventory and duplicate copies of the purchases and the pass book of the bank substantially showing his cash sales, together with the pass books of his customers showing his credit sales.

"The failure of the insured, after his stock of merchandise covered by his policy of fire insurance has been destroyed by fire, to produce the books and inventory as required by the 'iron-safe clause' in the policy, does not render the policy null and void if the books were by the unintentional negligence of the insured left in the store building and burned in the fire that destroyed the stock of merchandise and building, if the insured is able and willing to produce a copy of the inventory and written evidence substantially showing his purchases and cash and credit sales from the time the inventory was taken until the time of the fire."

Whether or not satisfaction of the rule of substantial compliance may be a question of law for the court, or one of fact for the jury, will depend on the state of the evidence in the particular case.

It is plaintiff's theory that his case was brought within the rule of substantial compliance, and that, as his evidence was undisputed by defendants and showed conclusively the amount of his loss, the action of the court was not error under Morris Mfg. Co. v. Kales Stamping Co., 111 Okla.

286, 259 Pac. 564, and other cases by this court, which lay down the rule, to wit.

"The court may direct the jury to return a verdict where the facts are undisputed or are of such conclusive character that the court in its sound judicial discretion would be compelled to set aside the verdict returned in opposition to it."

From our statement of the evidential facts, it is apparent that inaccuracies exist in such parts thereof as relate to plaintiff's schedules of stock additions and sales, and that the court recognized that these inaccuracies rendered such facts inconclusive in character with the resultant reduction of plaintiff's loss by $926.39 less than the amount claimed by him in his petition and memorandum statement thereof, which claimed amount, it is fairly to be inferred by the record, plaintiff, at the time of the filing of the suits, intended to have established by the same evidence. That the court arrived at a materially different amount is persuasive upon us in the view that these inaccuracies may have materially affected the reliability of the data, or evidential facts, as constituting such a record of insured's business transactions, from which the insurer with reasonable certainty may have ascertained the amount of plaintiff's loss within the purview of the rule of substantial compliance.

Furthermore, if the data relied on by plaintiff be regarded as giving him a right of recovery within the meaning of the rule of substantial compliance, it is not speculative indulgence to say that ordinarily intelligent men reasonably might arrive at different sums as constituting with substantial accuracy the amount of plaintiff's loss.

In the state of the evidence, therefore, we think the question of substantial compliance was one of fact for determination by the jury under proper instructions, rather than one of law for the court upon plaintiff's motion for a directed verdict. Commercial Union Fire Ins. Co. v. Kelly, 144 Miss. 833, 110 So. 681; and see, also, Scottish Union & National Ins. Co. v. Moore Mill & Gin Co., supra. And logically, the fact that defendants offered no evidence, if that be the ground of direction, did not entitle plaintiff to a directed verdict in a fixed amount. Home Ins. Co. v. Akers, 96 Okla. 232, 221 Pac. 493.

The judgment of the district court, therefore, is reversed, and the cause remanded, with directions to grant defendants a new trial.

BENNETT, HALL, LEACH, and DIFFENDAFFER, Commissioners, concur.

HERR and EAGLETON, Commissioners, dissent.

By the Court: It is so ordered.