SNELLING & SNELLING OF OKLAHOMA CITY, INC., a corporation, Plaintiff,

v.

The AETNA CASUALTY AND SURETY COMPANY, Defendant.

Civ. No. 64-92.

United States District Court W. D. Oklahoma.

Sept. 22, 1964.

772

John Moran, Oklahoma City, Okl., for plaintiff.

Ross & Holtzendorff, Oklahoma City, Okl., for defendant.

DAUGHERTY, District Judge.

The plaintiff brings suit herein against the defendant on two policies of insurance, both of which were issued by the defendant to the plaintiff. One of the policies is known as a Comprehensive Dishonesty, Disappearance and Destruction Policy under the insuring agreement of which there is $5000.00 coverage for the dishonesty of each identifiable employee. The other policy is known as a Valuable Papers and Records Policy and affords coverage in the amount of $10,000.00. There appears to be no question about the issuance of the policies and that the alleged incidents complained about occurred during a period of time in which the insurance provided by each policy was in effect.

The plaintiff was and is engaged in the general employment agency business in Oklahoma City and asserts that during March of 1963, three of its employees left their employment with the plaintiff and in doing so unlawfully and wrongfully took from the plaintiff's place of business certain papers and records in the form of an ad book, a cross reference index, a branch managers manual, a placement directors manual, master order cards, master lead cards, male applications and female applications. The plaintiff further alleges that upon the departure of these three employees or shortly thereafter they each became employed by a competitor of the plaintiff. It appears that the three employees, who are named by plaintiff, left plaintiff's employment during a period of about two weeks.

The defendant answers by denying that the three named employees took any of the records involved, and further asserts that the plaintiff is not entitled to recover, inasmuch as it has failed to meet certain conditions in the valuable papers and records policy with reference to the required means of keeping and securing said records and as to both policies for failure to notify the police of the alleged loss as required by each policy inasmuch as the loss of said records was a violation of law.

The dishonesty policy covers the loss of property which the insured shall sustain through any fraudulent or dishonest act or acts committed by any of its employees acting alone or in collusion with others. The policy also provides that if any such fraud or dishonesty is committed by one or more of the employees of the insured and the insured is unable to designate the specific employee or employees causing such loss, the insured shall nevertheless have the benefit of the aforementioned insuring agreement, provided, that the evidence submitted reasonably proves that the loss was in fact

due to the fraud or dishonesty of one or more of the said employees. This policy also provides that the insured, upon discovery of any loss, shall give notice thereof to the police if the loss is due to a violation of law.

The valuable papers and records policy provides coverage for direct physical loss of or damage to valuable papers and records in the premises. This policy also provides that each receptacle within which the valuable papers and records are kept when not in use, is described as "Metal Filing Cabinets," and at all times when the premises are not open for business, the insured will keep the valuable papers and records in the receptables so described except while such valuable papers and records are in actual use. This policy also provides that upon knowledge of loss the insured shall notify the police thereof if the loss is due to a violation of law.

The principal owner or manager of the plaintiff, whose name is Edgar Kopp, and his wife, Elaine Kopp, testified about the missing records and how and where they were maintained, used and kept in the office. Mr. Kopp also testified as to their value. In general, Mr. Kopp testified to the existence of these records and that shortly after the last of the three employees in question left the plaintiff's employment, their loss was discovered. His testimony was conflicting and contradictory in large measure with reference to the manner in which these records were kept, particularly with reference to their location at night. It seems he kept the manuals in his desk when not at his home. The ad book, cross reference index and master cards were kept in the receptionist's desk. Mrs. Kopp noticed some of the material being gone. One Ron Kennedy, an employee of the plaintiff, testified he knew nothing about the master lead cards or the manuals but said the master ad book could not be found after the employees left. This is a book in which ads run by the plaintiff are pasted. He only recalled one of the plaintiff's applicants being placed in work by the competitor with which the three em-

ployees became associated after their departure. He stated that all applications were kept on the tops of desks day and night. Another present employee of plaintiff, one Evelyn London, said that some female applications were missing when the employees left. Upon further examination she only recalled one such application and that she had a new application made out. This witness also testified that the applications were kept on tops of desks day and night. None of the plaintiff's witnesses saw any of the employees remove or take anything from the premises at any time with reference to the missing articles or records. It seems that all master records were duplicated in the various departments of plaintiff's business.

The three accused employees each testified and denied taking any of the missing records. All testified about their reasons for leaving the plaintiff's employment, which were personal in nature. Also that their new employer paid better commissions. They denied taking any records to their new employer and the manager of the company with which they went to work also testified and denied that any such records were ever brought to, seen, or used in her business operations. There is no evidence that the records were ever found or seen in the office of the new employer. This witness also testified to the effect that such records would serve no purpose or advantage to her business. Each of the three accused employees testified that no one connected with the plaintiff has ever directly accused them of taking any of these records and the first knowledge they had of any such accusations was from insurance adjusters investigating the claim of plaintiff.

Other former employees of the plaintiff testified generally to the effect that all applications were either left on the tops of desks night and day or were stacked on the floor. With reference to keys to the outer door the testimony generally was to the effect that Mr. and Mrs. Kopp had a key to the outer door, as did Mrs. Sherri Massie, a secretary-bookkeeper,

and perhaps the receptionist, one of the three accused employees, had a key to the front door. One present employee of the plaintiff who has worked for the plaintiff since February, 1962, and who testified in rebuttal, had no knowledge of the existence of the aforementioned master lead cards or master advertising book. He also knew nothing about the existence of a master cross reference index in the office. He saw a placement directors manual in the office after the employees left. He did testify about some master order cards and thought that they were missing after the three employees left. This witness testified that the desk of the receptionist at the time of the alleged loss was a wooden desk and that said master order cards were kept in said wooden desk. It was the testimony of other witnesses that the master ad book and the master cross index reference were also kept in this desk of the receptionist. The testimony of Sherri Massie, the secretary-bookkeeper who was employed by plaintiff before, during and after the period involved in this case, was to the effect that the only keys to the front door were those kept by Mr. and Mrs. Kopp and by herself. She also testified that applications were left on tops of desks and on the floor at night. She further testified that it was a regular occurrence in the office for applications to be lost or misplaced and unable to be found. This witness also testified that she and Mrs. Kopp had destroyed some applications and all such destroyed applications were indicated on the Roladex system by a letter "D". This witness also testified that after the three employees left the Kopps claimed that certain things were missing and that they went over the office but it was her recollection that most everything had been found. She testified that all ad books were there after the departure of the three accused employees. Another witness, Lois Pendergraff, a former employee for the plaintiff, also testified that Mrs. Kopp had destroyed some applications; that there were several ad books and that applications were gener-ally kept on the desks. She also testified that it was common practice for certain applications to get lost in the office. She also testified that some applications were stacked on the floor. There was testimony that the plaintiff had had a previous valuable paper loss with an insurance company and that Mr. Kopp had had a previous fire claim in an earlier business.

■ Turning now to the dishonesty policy, it is the opinion and finding of the Court that the evidence presented is wholly and completely inadequate to establish any fraudulent or dishonest act or acts committed by any of the three employees in question. In the first place, the Court has serious doubts about the actual existence of some of these alleged lost records but as to those that may have been in existence the Court is fully and completely satisfied from the evidence that none of them were removed or taken by any of the three employees in question or by any other unidentified employee of the plaintiff. The evidence shows that the plaintiff never reported this matter to the police, never confronted the three employees with accusations that they had taken the records except by and through this litigation, and even at the trial Mr. and Mrs. Kopp were unwilling to accuse the three employees of taking these records except Mrs. Kopp said that she now accuses one of them. In the state of the evidence and record of this case the Court is unwilling to say that any of the three accused employees or any other employees of the plaintiff has committed any fraudulent or dishonest act or acts with reference to the alleged missing records. Such being the case the Court is of the opinion and finds that the plaintiff has not sustained by a preponderance of the evidence any acts of a fraudulent or dishonest nature on the part of the three accused employees or any other employees of the plaintiff. In this connection, the Court specifically finds from the evidence that none of the alleged missing records were taken by or removed by any of the three accused employees of the plaintiff.

In connection with the valuable papers and records policy, the Court is not satisfied from the evidence presented by the plaintiff that it has suffered any direct physical loss of valuable papers and records in its premises. Taking all of the evidence into consideration and weighing the same, the Court is of the opinion that the plaintiff has not lost any valuable papers or records in its office. In addition, the parties agreed in open court that the requirement of keeping such valuable papers and records in metal filing cabinets is a condition imposed upon the plaintiff which if not met would preclude the plaintiff from a recovery herein, the same being a promissory warranty. Orient Ins. Co. v. Van Zandt-Bruce Drug Co., 50 Okl. 558, 151 P. 323; 45 C.J.S. Insurance § 536. Under the great weight of the evidence in this case the Court is of the opinion and finds that none of the alleged missing records were kept and secured in metal filing cabinets when not in use, as required by the policy. It is not felt that wooden desks, tops of desks and the floor is a fair, reasonable or substantial compliance with this term and condition of the insurance contract. Compare: Liverpool & London & Globe Ins. Co. v. Kearney, 180 U.S. 132, 21 S.Ct. 326, 45 L.Ed. 460; German American Ins. Co. v. Fuller, 26 Okl. 722, 110 P. 763; Shawnee Fire Ins. Co. v. Thompson & Rowell, 30 Okl. 466, 119 P. 985; Dickey v. Springfield Fire and Marine Ins. Co., 56 Okl. 616, 156 P. 204; Sun Ins. Office v. Neumann, 148 Okl. 38, 296 P. 966. The evidence is far more convincing to cause the Court to conclude that part of these alleged missing records did not exist in the first place and that none in existence were missing, or that they or part of them were destroyed or otherwise discarded by the plaintiff. One has only to listen to the testimony of Mr. Kopp, plaintiff's principal officer and manager, and observe his demeanor on the witness stand and note the many conflicting answers and testimony given and the evasive and hesitant manner in which he answered questions to conclude that plaintiff has failed to sustain the burden imposed upon it to establish by a preponderance of the evidence the physical loss of valuable papers and records in the premises.

Accordingly, judgment should be entered in favor of the defendant and against the plaintiff and the complaint should be dismisssed. Counsel for the defendant will prepare an appropriate judgment for the signature of the Court and entry herein.